# CHARLESTON.

## JACKSON v. KITTLE.

*(HOLT, JUDGE, absent.)

Submitted September 8, 1890.—Decided November 28, 1890.

1. QUIA TIMET—WARRANTY.

As a general rule, a party can not maintain a suit to remove a cloud or a bill *quia timet*, who has no other interest than the fact that he has sold the property with a covenant of general warranty; but in a case, where evidence is about to be lost, or the party's inertia would result in the perfecting of an adverse title, he is not bound to lie by, but may bring his bill of *quia timet*.

2. TAX-SALE—SHERIFF—DELINQUENT LANDS—DEED.

The law requires the sheriff to append to his return of sales of delinquent lands a prescribed affidavit. If he omit to do so, or omit from such affidavit a material or substantial portion of it as so prescribed, the clerk should not make the purchaser a deed; and, if the objection is interposed before the deed is made, the sale should be set aside.

3. CONSTRUCTION OF STATUTE.

A statute ought to be construed as a whole, and each section should be so construed, that, if possible, no clause, sentence or word should be superfluous, void or insignificant; and where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention will be regarded as an exception and will prevail.

*L. D. Strader* and *A. M. Poundstone* for appellant cited: 19 W. Va. 233; Id. 223; 23 W. Va. 675; 24 W. Va. 173;

---

*Case submitted before Judge Holt's appointment.

71 Am. Dec. 425, 443; 3 Washt. Real Prop. (4th Ed.) § 545; 4 Am. Rep. 214; 13 Wall. 310; 17 Am. Dec. 508–510.

*F. Woods* for appellee cited:

Code c. 51, s. 15; 13 Johns. 316; 80 Va. 357; Code c. 31, s. 16, 17, 24; Blackw. Tax. Tit *299, *432, *433.

LUCAS, PRESIDENT:

This suit was originated by a bill filed by Minter A. Jackson against James D. Wilson, clerk of the County Court of Randoph county, Leland Kittle, the purchaser, and John S. Fisher, the former owner of a tract of one thousand three hundred and seventy five acres, which was sold by the sheriff at a sale of delinquent lands on the 27th of November, 1887, or, as the bill alleges, on the 28th of said month. In pursuance of a decree of the Circuit Court of Upshur county rendered in certain suits in equity pending and heard together, C. C. Higginbotham and G. M. Fleming, commissioners, sold to the plaintiff a certain tract of one thousand three hundred and seventy five acres of land situate in Randolph county, and by a decree of the Circuit Court of Upshur county pronounced in said causes on the 14th day of October, 1886, the said sale was confirmed, and the said commissioners were directed to convey said tract of land to the plaintiff. At a sale of delinquent lands made by the sheriff of Randolph county on the 28th day of November, 1887, eight hundred and ninety acres of said tract of land were sold to one Leland Kittle for the non-payment of taxes charged thereon for the year 1885 in the name of John S. Fisher, the owner thereof, before the said sale by the commissioners; and before said Leland Kittle obtained a deed for the land so purchased by him, towit, on the 28th day of February, 1889, the plaintiff presented his bill in equity against Leland Kittle, John S. Fisher, and James D. Wilson, clerk of the County Court of said county of Randolph, to the Honorable W. G. BENNETT, judge of the eleventh judicial circuit of West Virginia, and obtained an injunction inhibiting said clerk of the County Court from making a deed to said Kittle *etc.*, and thereupon on the 1st day of March, 1889, the plaintiff filed said bill in the clerk's office of the Circuit Court of said

county of Randolph, gave the bond required by said injunction-order, obtained process on defendants to answer said bill, and matured the same for hearing.

The general object of said bill was to set aside the sale of eight hundred and ninety acres of the said tract of land so made by the sheriff of Randolph county to the said Kittle for irregularities, defects and omissions in the proceedings, by which the said sale was made, and after the sale. At the May rules, 1889, in the clerk's office of the Circuit Court of Randolph county, the defendant Leland Kittle appeared, entered his demurrer to said bill and filed his separate answer thereto, and thereafter both the plaintiff and the said Kittle took and filed depositions in the cause.

By deed bearing date on the 18th day of February, 1887, the plaintiff sold and undertook to convey the said tract of one thousand three hundred and seventy five acres of land to the Welsh Land Association, John B. Lodwick, president, and W. R. Thomas, secretary, and retained a vendor's lien on the face of said deed to secure the payment of the unpaid purchase-money due plaintiff; and for fear it might be held that they as well as other parties, to whom said John B. Lodwick afterwards undertook to convey certain parcels of said tract of land by deeds, were necessary parties to said suit, the plaintiff, on the 27th day of September, 1889, in the Circuit Court of Randolph county filed his amended and supplemental bill to his original bill, by which he sought to make new parties defendants to said cause and alleged some newly-discovered grounds, as he thought, for setting aside said tax-sale, and thereupon moved the said Circuit Court for leave to remand said amended and supplemental bill to rules, for the purpose of suing out process against the defendant therein named, and maturing the same for hearing, to which the defendant Leland Kittle by counsel objected, and the court sustained said objection and refused to remand said amended and supplemental bill to rules for the purpose aforesaid.

On said last-named day, the defendant, Leland Kittle, entered his demurrer in writing to the said original and amended and supplemental bills, and filed his separate answer to the amended and supplemental bill, and moved the

court to dissolve the injunction theretofore awarded in said cause; and thereupon the court heard the cause upon the pleadings, proofs and motion to dissolve the injunction, and after considering the same overruled the demurrer, dissolved the injunction and dismissed the bills with costs to the defendant Leland Kittle.

The object of this suit is to remove a cloud from the title of the tract in question by enjoining and restraining the purchaser at the tax-sale from obtaining his deed; and by setting aside, annulling and declaring void said sale.

There can be no doubt that a court of equity has authority to remove a cloud from the title to realty by setting aside tax-deeds and tax-sales under proper circumstances. The exercise of the jurisdiction, however, depends mainly upon two conditions :—the plaintiff must have a sufficient interest in the subject-matter, and the remedy at law must be inadequate. *Simpson* v. *Edmiston*, 23 W. Va. 675; 3 Pom. Eq. Jur. § 1399, with notes; Blackw. Tax-Titles, c. 34; *Barr* v. *Clayton*, 29 W. Va. 256 (11 S. E. Rep. 899). In the case last cited (*Barr* v. *Clayton*) the owner had sold all of her interest, retaining a lien for the purchase-money, and had subsequently died. The suit was instituted by her heirs, and her personal representative was no party, and it was held, the heirs had no sufficient interest to enable them to maintain the suit.

In the present case the plaintiff, when he instituted his suit, had sold the land in controversy, although he had not at the time of sale any deed himself, and his deed would pass nothing but his equitable title together with a right to demand a deed. In his conveyance to the Welsh Land Association; he reserved a vendor's lien, and covenanted to warrant generally the title. It appears further, that he subsequently acquired the legal title, and also that he released his lien for the purchase-money. These facts are introduced into the case by amended and supplemental bill, and the answer thereto.

The first question in the case is : Did the complainant have such an interest in the subject of controversy as would authorize him to maintain suit? If he had, the jurisdiction of chancery to entertain his bill to remove a cloud is

quite clear, because, having only an equitable title, and there being no adversary possession, it is obvious, he had no adequate remedy at law. The only interest which he had in the premises was the fact, that he had conveyed them with a covenant of general warranty. In the case of *Bissell* v. *Kellogg*, 60 Barb. 617, it was held that "a party can not maintain an action to remove a cloud upon the title to land, in which he has no interest, upon the sole ground that he has warranted the title." In the opinion of the court it is said:

"We have been referred to no authority, and have discovered none, giving countenance to the idea that a party can maintain a suit to remove a cloud upon the title to land in which he has no interest, and upon the sole ground that he has warranted the title; and we do not think such an action can be maintained. Equity interferes to remove clouds upon title because they embarrass the owner of the property clouded, and tend to impede his free sale and disposition of it. A cloud upon title is a title or incumbrance, apparently valid, but in fact invalid. A party whose only interest is that he has given a covenant of warranty can not be embarrassed or inconvenienced by the existence of a cloud. He can only be called upon on his covenant of warranty where there has been an eviction under valid and paramount title."

This reasoning seems quite clear and conclusive so far as it goes; but the opinion is qualified, as it proceeds, by tacitly admitting that there are exceptions. If the present were a case in which a tax-deed had been actually executed and delivered, and the object were to set it aside, we might well hesitate to do so at the instance of one who had no other interest than his general warranty of title. But in this case no actual deed had been made, and the object was to interpose between the tax-sale and the execution of the deed, and to prevent the latter. Our Code cures certain irregularities, if not taken advantage of before the execution of the deed, but which might nevertheless invalidate the tax-sale, if so taken advantage of before the clerk consummates the transaction by giving the purchaser his deed. For example, it is provided in section 25, c. 31, p.

220, Code 1887, that "no irregularity, error, or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, or in the list of sales filed with the County Court, or in the affidavit thereto, or in the recordation of such list or affidavit as to the manner of laying off any real estate so sold, or in the plat, description, or report thereof, made by the surveyor, or other person, shall, after the deed is made, invalidate or affect the sale or deed."

The question, therefore, is: Where such defects, as are cured by the making of the deed, have characterized the sale, must one, who has warranted generally the title, lie by and suffer himself to be placed in a worse position? I think the case analogous to one where the evidence is about to be lost. In such case I do not think the vendor, whose inertia would result in perfecting a title, which would oust his vendee, must lie by and thus most materially impair, or suffer to be destroyed, his defence of the title, in case his vendor notify him to defend, or his own defence in an action on his covenant of warranty. For these reasons, I think the plaintiff had sufficient interest to maintain his bill, and the demurrer was properly overruled.

I come now to consider the irregularities in the tax-sale, which it is claimed invalidated it and justified the interposition of the court of chancery. There is no question of a right to redeem involved here, since it is admitted on all hands, that the year, within which redemption was authorized by law, had long expired, when suit was instituted. So also the tender made on the 2d of January, 1889, was beyond the limit of time fixed by law.

The irregularities in the proceedings attending the sale are claimed to have been the following: (1) Prior to said sale of land said sheriff did not post one of the copies of the list of said delinquent lands received from the auditor on the front door of the court-house of said county of Randolph, with a notice appended thereto, nor did any other person post said list and notice on said front door. (2) The caption of said list is not in compliance with section 12 of chapter 31 of the Code of 1887, as it should be. (3) The oath of said sheriff of Randolph county is not in compliance with section 13 of said chapter of Code, as it

fails to show the list of real estate redeemed, and the names of the persons who redeemed the same, and fails to show that said sheriff was never at any time directly or indirectly interested in the purchase of said real estate. (4) Said list does not leave therein a column for amount of school-district and independent school-district taxes *etc.*, as the law requires. (5) Said sheriff's affidavit is not in form or effect as required by the statute, for the reason that, in addition to the defects hereinbefore set forth, it fails to set forth that said list contains a true account of all the real estate within his county which had been sold by him, said sheriff. (6) No list of redemptions was made. (7) No local descriptions of lands sold are given in the list so published.

In regard to the first objection it is sufficient to say, that the evidence does not sustain the omission as alleged.

So also in regard to the second charge the caption of the delinquent list was substantially in the form by law prescribed.

As to the third alleged irregularity there is exhibited with the answer of the defendant a "list of real estate in the county of Randolph redeemed from the sheriff prior to the date of sale in the month or months of October and November, 1887, by payment to him of delinquent taxes due thereon, for the years 1885 and 1886," and the oath of the sheriff appended thereto seems to be unimportant so far as regards lands redeemed. See Code 1887, c. 31, s. 13.

The fourth objection does not seem to be sustained by the record, evidence and exhibits.

The fifth objection is that the sheriff's affidavit to his list of lands sold as delinquent lands is not in form or effect as required by statute. The form required by the statute (see chapter 31, §§ 12, 13, Code 1887) is as follows :—"I, A. B., sheriff" *etc.*, "do swear" *etc.*, "and that I am not *now, nor have I at any time been,* directly or indirectly interested in the purchase of any of said real estate, so help me God." In the affidavit objected to in this case, the words, which I have italicized in the prescribed affidavit, were omitted, and the sheriff has sworn that he is not interested in the purchase of the lands sold by him, but fails to swear that he

has not at any time been so interested. So far as this affidavit shows, he might have been interested at the time of sale, and the affidavit still be true. It is evidently neither in form nor substance the affidavit required by law. If there were any doubt upon this subject, it would be removed by the fact that the affidavit is in the old form prescribed by the Acts of 1872–73, and 1882, while the act that was passed February 5, 1887, and went into effect May 5th, of the same year, abolished the old affidavit, and substituted the new by an amendment. To say that the amendment was not material or substantial would be to impeach the intelligence of the legislature. Compare section 13, c. 5, p. 8, Acts 1887, with same section of chapter 130, p. 393, Acts 1882. It is such a defective execution of the demand and intention of the amended statute as to amount to no affidavit at all; and we may discuss the importance of the omission as if the sheriff had appended no affidavit whatever to his list of sales.

Our statute provides: "And no irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, or in the recordation of such list or affidavit, or as to the manner of laying off any real estate so sold, or in the plat, description or report thereof made by the surveyor or other person shall, after the deed is made, invalidate or affect the sale or deed." Code, p. 220, c. 31, s. 25. All of the defects in the return of sales which are mentioned in this section had been held fatal in the courts of this State and other states to the validity of the tax-sale. Thus, in *Jones* v. *Dils*, 18 W. Va. 763, it is said: "Now, if there are omitted from the list some of the positive requirements of the statute, can it be called a mere irregularity which will not affect the sale? To say that the legislature has enacted that certain proceedings are necessary to the sale of real estate for taxes, and at the same time to say that the omission of any of such proceedings is mere irregularity, is absurd. If any of such proceedings may be omitted, why not all? How can we say which is material, and which is not? The legislature prescribes the rule, not the courts; and we must regard all the requirements of the statute alike essential." See, also, *Dequasie* v. *Harris*, 16 W. Va. 360.

Again, in *McCallister* v. *Cotrille,* 24 W. Va. 173, it was decided that "it is the official duty of the clerk of the county court to note in his office the day on which the sheriff returned his list of the sales of lands sold for delinquent taxes; and if he fails to make such note, or his office shows that such list was not returned and filed therein for more than ten days after the completion of such sales, this, in either case, is such an omission and irregularity as materially to prejudice the rights of the owner of land sold at such sale, and therefore vitiates any deed made to a purchaser of the land by said clerk or a commissioner appointed for that purpose." In the same case, on page 176, it is said: "The affidavit of the sheriff is an essential part of his report." See, also, *Barton* v. *Gilchrist,* 19 W. Va. 223.

In *Simpson* v. *Edmiston,* 23 W. Va. 675, it was held that the omission by the clerk of the county court to note in his office the day on which the sheriff returns to his office the list of lands sold for delinquent taxes is good ground to set aside the tax-deed as invalid.

In his work on Tax Titles, Mr. Blackwell says: "Where the law requires the officer who made the sale to return a history of his proceedings, it must be done at the time and in the manner prescribed, or the sale is invalid. The return must show the description of the land, the name of the purchaser, the time of the sale, and all other particulars connected with it, which the law requires." Blackw. Tax-Titles, 304.

Now, the legislature must be presumed to have known the law, when they passed the curative act of 1882, which we are now considering (see Acts of the Legislature, 1882, p. 401, c. 130, § 25); and the fact that they expressly limit its remedial efficacy to the period after the purchaser shall have obtained his deed renders it certain that they did not mean to prevent the owner from availing himself of these errors and irregularities as against the equitable title of the purchaser, before his deed is obtained. The clerk has no power to make a deed, unless the sale has been perfectly fair; and the record evidence to him of that fact is the affidavit of the sheriff to the return of sales, and, if this is wanting, the clerk can be restrained by injunction from

making the deed.   I have not overlooked the very comprehensive clause with which the section (25, c. 31, Code) concludes, which is as follows :

"But no sale or .deed of any such real estate under the provision of this chapter shall be set aside, or in any manner affected, by reason of the failure of any officer mentioned in this chapter to do or perform any .act or duty herein required to be done or performed by him after such sale is made, or by illegal or defective performance, or attempt at the performance, of any such act or duty after such sale, or by reason of the conveyance by the deed hereinbefore mentioned and prescribed of a less quantity of real estate than that mentioned in the lists of sales made out and returned as provided in the twelfth, thirteenth, and fourteenth sections of this chapter, if the real estate so conveyed by such deed be in fact the same which was sold as delinquent."

If this concluding paragraph is to be given the force of a sweeping indemnity against all defects in the return of the officer making the sale, then the preceding paragraph, which I have quoted, would be entirely useless or repugnant.   Such a construction will be avoided if possible.   Conflict and repugnance in statutes should always be avoided by construction, if possible.   Indeed a statute ought upon the whole to be so construed that, if it can be prevented, no clause, sentence or word should be superfluous, void or insignificant.   Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention will be regarded as an exception, and will prevail.   Dwar. St. (9 Law Lib.) 658.

By applying these principles to the section we are discussing, and construing the concluding sentence quoted above as referring to attacks upon the deed, or upon the sale after the deed is made, all conflict will be avoided, and the remedial effect of the statute not materially diminished. Inasmuch, however, as the complainant below has offered to pay to the defendant Kittle the same amount which he would owe were this a case for redemption, I think he should comply with that offer, and upon his doing so the tax-sale

should be set aside, and the injunction perpetuated. For these reasons, the decree rendered by the Circuit Court of Randolph county must be reversed, and the cause remanded.

REVERSED.   REMANDED.