# CHARLESTON.

BANK OF BRAMWELL v. COUNTY COURT OF MERCER CO.

Submitted January 21, 1892.—Decided April 2, 1892.

1. ASSESSMENT OF TAXES—BANKS—DIRECTORS.

When the assessor of a county applies to the proper officer of a bank, organized under the laws of this State, located and doing business in the county and district for which he is assessor, under the provisions of section 64 of chapter 29 of the Code, to ascertain the value of the capital employed or invested in its business, it is the duty of the bank-officer to furnish such information to the assessor as will enable him to properly enter the same in his personal property book, and the directors and stockholders of said bank have no right to elect to withhold such information from the assessor.

2. ASSESSMENT OF TAXES.

    It is not the duty of the shareholder in such bank to list his stock with the assessor for taxation, when the same has been listed under the provisions of section 64 of said chapter.

3. CONSTRUCTION OF STATUTES.

    In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make its parts harmonious, if practicable, and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of the statute to be without meaning.

4. ASSESSMENT OF TAXES.

    The intention of the law is that the capital stock of the bank shall be listed for taxation in the county where such bank is located.

*Keller & Henritz* for plaintiff in error cited Code (1887) c. 29 ss. 4147, 51, 52, 64, 68; 17 Mich. 479; 4 Biss. 472; Cool. Tax. (2d Ed) 390; 3 Wall. 573; 4 Wall. 459; 121 U. S. 138–162; 112 U. S. 689–703; Pott. Dwar. Stat. 144; 34 W. Va. 207; Cool. Tax. (2d. Ed.) 264.

*Johnston & Hale* for defendant in error cited 79 Va. 113; 95 U. S. 686, 687; Code, c. 29.

*Attorney General Alfred Caldwell* for the State cited Const. Art. VIII, ss. 24, 25; 135 U. S. 467; Code (1887) c. 113, s. 4; Id. c. 135, s. 1; Code (1860) c. 35, s. 102 *et seq.;* Code (1868) c. 29, ss. 94–98; Acts 1875, c. 54, ss. 8, 98; Acts 1882 c. 161; Sedg. Stat. & Const. Law 143; Cool. Const. Lim. 3836, 554; Pott. Dwat. 406; 92 U. S. 614; 19 Wall. 660; 46 N. J. L. 346; Cool. Tax. 32; 102 U. S. 472; 2 Dut. 519; 58 Mich. 367; 6 Neb. 69; 19 Wall. 116; Id. 660; 115 U. S. 555; 34 Mich. 59; 20 W. Va. 164; 26 W. Va. 829; 5 Mass. 558; 6 Kan. 500; Shear. & Redf. Neg. § 163; 10 Cal. 403; 19 Kan. 587; 27 W. Va. 785; 28 W. Va. 264; 3 Kan. 55; 28 Ark. 270; 2 Gill 487; 4 Wheat. 430; 24 W. Va. 561; 114 Mass. 247; 58 Mich. 367; 57 Cal. 614; 75 Ill. 292; 1 O. St. 433; 2 Dall. 412; 10 Am. St. Rep. 107; 30 W. Va. 479.

ENGLISH, JUDGE:

    On the 16th day of January, 1890, the Bank of Bramwell, a corporation doing business at the town of Bramwell

in Rock district, in Mercer county, applied by way of petition to the County Court of said county for the correction of what it considered to be an erroneous assessment, and for the purpose of being relieved and exonerated from the payment of the sum of eight hundred eighty nine dollars and ninty eight cents, that being the amount of taxes and levies claimed to have been erroneously assessed against said bank on the personal property books of said county for the year 1890.

Afterwards, on the 17th day of April, 1891, said petitioner filed an amended petition having the same object, which petition and amended petition were dismissed at the hearing, and said court refused to make the correction asked for; and thereupon said petitioner excepted to the action of the court, and had the evidence taken thereon certified by the County Court, and applied for and obtained an appeal to the Circuit Court of said county, as is provided for in section 94 of chapter 29 of the Code; and on the 19th day of June, 1891, said appeal was heard by said Circuit Court, and the judgment of the County Court was affirmed; and from said judgment the said petitioner applied for and obtained this writ of error.

It is earnestly and elaborately contended by the attorney-general, representing the interests of the State, that this Court has no jurisdiction of the matters presented for consideration by this writ of error; that there really was no suit; and that a writ of error would not lie to the judgment of the Circuit Court on the appeal provided for in section 94, c. 29, Code, which provides that "if the court, upon an application to correct an assessment under any of the provisions of this chapter, refuse to make the correction asked for, the applicant may have the evidence taken thereon certified by the County Court, and an appeal may be taken as in other cases from the order of refusal to the Circuit Court, and such appeal, when allowed by the Circuit Court or judge, shall, except as hereinbefore provided, have preference over all other cases pending in said court."

Now, this surely was a controversy, and a controversy too in reference to the proper mode of levying taxes upon the stock of the Bank of Bramwell; and, when we turn to sec-

tion 3 of article 8 of the constitution, we find that this Court has appellate jurisdiction in civil cases where the matter in controversy exclusive of costs is of greater value or amount than one hundred dollars, and in controversies concerning the right of a corporation or county to levy tolls or taxes; and, in addition to this said section confers such other appellate jurisdiction in both civil and criminal cases, as may be prescribed by law; and turning to section 1, c. 135, Code, we find these same provisions are carried into the statute.

So far, then, as the question of jurisdiction is concerned, we are of opinion that the case is properly before us for consideration, and the question presented is one of statutory construction, requiring us to determine what are the duties of the assessor under certain sections of chapter 29 of the Code, with reference to the assessment of the shares of stock held by individuals in a bank chartered under the laws of this State.

The cashier of the Bank of Bramwell, when applied to by the assessor of Mercer county, declined to list for taxation the shares held by different stockholders in said bank, stating that the stockholders had agreed among themselves to have the stock listed by the shareholders themselves, and the assessor declined to go to the individual shareholders, but proceeded to assess said bank with the amount of said stock, charging the same at a valuation greatly in excess of its true value.

The first error assigned by the plaintiff in error is that the Circuit Court should have set aside the said order of the County Court of April 17, 1891, corrected the personal property book, and relieved and exonerated petitioner from the payment of taxes and levies on its capital for the year 1890, as prayed for in its applications or petitions; and the second assignment of error is that the court erred upon the merits of the case.

The petitioner had an option either to give in to the assessor a statement of the amount of the capital of the bank exclusive of its real estate, or to decline to so give it in. In this case it declined to make such statement, and the State, county, and district were then necessitated, under the law,

to look to the individual stockholders of said bank for their taxes and levies, charging each individual stockholder with the taxes and levies on the value of the stock held by him.

These assignments of error may be considered together, for the reason that they both involve the consideration of the duties of the assessor with reference to listing and assessing the shares of stock in a bank, under the provisions and directions or our statutes upon the subject. The portions of the statute which bear upon this question are found in parts of sections 41, 64, 68, c. 29, Code, and read as follows:

"Sec. 41. Every person of full age and sound mind shall list for taxation the property belonging to him, including the shares held by him in any national or other banks in this or any other State, where the same is listed under the provisions of section 64 of this chapter."

"Sec. 64. He (the assessor) shall ascertain from the proper officers or agents of all incorporated companies in his district (except railroads and foreign insurance, telegraph, and express companies) the actual value of the capital employed or invested by them in their trade or business (exclusive of real estate and property exempt by law from taxation) and enter the same in his personal property book. The real estate of such companies shall be assessed and entered in the land book as in other cases. * * * When the capital of a company is assessed as aforesaid, the personal property thereof * * * shall not be otherwise assessed nor shall any individual shareholder or partner therein be required to list or be assessed with his share, portion, or interest in said capital."

"Sec. 68. From the information obtained as aforesaid, the assessor shall proceed to make up his personal property book as follows: He shall enter therein the names of the owners of personal property, * * * alphabetically arranged, by districts, and opposite the name of each person in separate columns, the persons and subjects of taxation with which he is chargeable; that is to say, * * * the value of the property and capital (excluding real estate and articles exempt from taxation, but including money, credits, and investments not exempt from taxation, whether

due or not, or whether in or out of the State) employed by any corporation, firm or individual in any trade or business, after deducting debts, as allowed by sections 52 and 65 of this chapter; * * * value of all personal property not exempt from taxation, nor otherwise assessed, including the number of shares of stock held by any person in any bank doing business within this State; and it shall be the duty of any officer of such bank, who may be called on for that purpose, to furnish the assessor with the names of all non-resident stockholders in such bank, and the amount of stock held by each of them therein;" and section 51 of said chapter provides that "when the property, stock, or capital of any company, whether incorporated or not, is assessed to such company, no person owning any share, portion, or interest therein shall be required to list the same, or be assessed with the valuation thereof."

Now, while it is clear that the object and intention of the legislature in enacting these sections was that bank stock should be assessed with the taxes, at the same time it never was the intention that the same stock should be taxed twice for the same year—that is, taxed in the name of the bank, and also in the name of the stockholder—and this fact may be of assistance to us in determining the duties of the assessor under the sections of the Code we have quoted above.

Potter's Dwar. St. p. 144, lays down certain rules for the construction of statutes, as follows:

"(6) Statutes must be interpreted according to the intent and meaning, and not always according to the letter."

"(7) The intention of the legislature may be found from the act itself, from other acts *in pari materia,* and sometimes from the cause or necessity of the statute; and, whenever the intent can be discovered, it should be followed with reason and discretion, though such construction seem contrary to the letter of the statute. This is the rule where the words of the statute are obscure."

"(12) In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make its parts harmonize, if practicable, and give a sensi-

ble and intelligent effect to each. It is not to be presumed that the legislature intended any part of a statute to be without meaning."

This Court in the case of *Jackson* v. *Kittle*, 34 W. Va. 207, point 3, of syllabus (12 S. E. Rep. 484) held that a statute ought to be construed as a whole, and each section should be so construed that, if possible, no clause, sentence or word should be superfluous, void or insignificant; and where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention will be regarded as an exception, and will prevail."

Now, the real controversy in this case was as to the right of the bank under the statute to elect whether it would give in or list the stock, when requested to do so by the assessor, or decline to do so and thus compel the assessor to go to the individual shareholders, and assess said stock to each of them, as it might be ascertained to be held by them respectively.

In determining the intention of the legislature upon this question, let us look first at section 64. As we have seen, it provides that the assessor shall ascertain from the proper officers or agents of all incorporated companies in his district (except railroads and foreign insurance, telegraph, and express companies, not, however, excepting banks) the actual value of the capital employed or invested by them in their trade or business (exclusive of real estate and property exempt by law from taxation); and, when he has so ascertained it, the statute does not require him to go to each individual shareholder, and list his shares of such stock with his other personal property, but it does require the assessor to enter the same when so ascertained in his personal property book.

The law is imperative that the assessor shall ascertain from the proper officers or agents the value of the capital employed, and this language would not have been used, if it was intended that it should be optional with such officer or agent whether he should give this information to the assessor. The imperative direction to the assessor, that he shall in this manner obtain the information, implies that it

is intended that the officer shall impart the information to him; and that it is intended, that said stock shall be so listed and assessed, is manifest from the concluding portion of said section, which provides: "When the capital of a company is assessed as aforesaid, the personal property thereof shall not be otherwise assessed, nor shall any individual shareholder or partner therein be required to list or be assessed with his share, portion, or interest in the said capital.

In this connection, an inspection of section 51, makes the intention, that the stock was primarily intended to be assessed to the company or corporation still more clear. It provides that when such stock or capital "is assessed to such company, no person owning any share, portion, or interest therein shall be required to list the same, or be assessed with the valuation thereof." Section 41 provides that "every person of full age and sound mind shall list for taxation the property belonging to him, including shares held by him in any national or other banks in this or any other State, except where the same is listed under the provisions of section 64 of this chapter."

This last section prescribes the duty of the shareholder when he is approached by the assessor for the purpose of obtaining a list of his property, and section 64 prescribes the duty of the assessor when he wishes to assess the property of a bank, including its capital stock; and not only directs how information shall be obtained as to the amount of the capital stock, but that when so ascertained it shall be entered by him in his personal property book.

The law intends that property of this character shall be assessed, and also provides that, if it is not assessed under section 64, the individual shareholder may list his stock under section 41; but our construction of the statute is that, when the assessor goes to the bank officer or agent under the provisions of section 64, it is the duty of such bank officer or agent to give the assessor the information required to enable him to assess the stock, and he can not elect; and the stockholders and directors have no right to decline to list said stock.

It is claimed in the petitions that the assessor without

information given by any of the officers of the bank has listed the property of said bank at the sum of fifty thousand eight hundred and fifty dollars, and the same is now charged to it on the personal property books of said county, and the same is greatly in excess of its true value. It, however, appears that the stock of said bank is at a premium of five per cent., and that there is a surplus of three thousand dollars of undivided profits. It is not, however, the province of this Court to correct erroneous assessments; but, if the officers of the bank had given in their property and stock as required by law, this cause of complaint would not have existed.

This disposes of the questions presented by the pleadings, which we deem proper for our consideration.

As to the third assignment of error, that sections 49 and 64 of chapter 29 of Warth's Code are in conflict with the constitution of the State of West Virginia and the constitution and laws of the United States, we will merely say that, as the Bank of Bramwell appears to be a corporation organized under the laws of the State of West Virginia, we are aware of no provision of the State constitution or of the United States constitution that is violated by the enactment of said sections, the legitimate object of the statute being to tax the stock in the county where the bank is located. For these reasons the judgment complained of is affirmed, with costs and damages to the plaintiff in error.

BRANNON, JUDGE:

I concur in the judgment and syllabus, and file this note only to say that I shall not feel myself bound by this decision upon the question of jurisdiction of the Circuit Court and this Court raised by the attorney-general's brief. Though I know the Court must have jurisdiction either to affirm or reverse, I shall reserve that question untrammelled as to future cases.

AFFIRMED.