# CHARLESTON.

## WINNING *v.* EAKIN *et al.*

### Submitted June 11, 1897—Decided November 17, 1897.

1. TAX SALES—*Sheriff's Affidavit—Deed.*

   An affidavit to a list of lands sold for taxes, as recorded in the Clerk's office of the County Court, is defective in the Sheriff's statement that "I am not, directly or indirectly, interested in the purchase of any of said real estate," instead of "I am not, nor have I at any time been, directly or indirectly interested," *etc.*; such defect did not in fact exist in the original affidavit found in the Auditor's office. Such defect will not affect the deed under the tax sale. (p. 20).

2. ASSESSMENT—*Tax Sales—Deed.*

   The assessment of two adjoining tracts of land in the same district as one will not vitiate a deed under a sale for taxes. (p. 20).

3. TAX SALES—*Surveyor's Report—Deed.*

   The failure of the surveyor's report and plat of a part of a tract sold for taxes to show that no improved land was included in the part, or to show that the length of the part is not more than double the breadth, will not affect a deed made under the sale. (p. 28).

4. TAX SALES—*Defects in Tax Sales.*

   The failure of a list of sales to show that the sale was at the front door of the Court House, or between the hours of 10 A. M. and 4 P. M., will not affect the deed under a tax sale. (p. 29).

5. TAX SALES—*Defects in Tax Sales.*

   The provisions of section 25, chapter 31, Code 1891, curing defects in tax sales, discussed. (p. 21).

Appeal from Circuit Court, Wetzel County.

Bill by E. D. Winning against Justus Eakin and John

M. Hart to set aside certain deeds.   Decree for plaintiff. Defendants appeal.

*Reversed.*

ROBT. McELDOWNEY and W. S. WILEY, for appellants.

E. B. SNODGRASS, for appellee.

BRANNON, JUDGE:

This is a suit to set aside a tax deed made by the clerk to the purchaser, and a deed by that purchaser to another, resulting in a decree annulling both deeds.   One objection to this tax deed is that Winning owned two separate tracts, one of fifty acres, another five hundred and four acres, and the charge on the tax book combined both tracts, instead of a separate charge, making the charge of five hundred and fifty-four acres.   It is true that the Code, in chapter 29, section 37, directs each tract to be assessed separately; but section 37*a* allows an owner of contiguous tracts in the same district, by filing a certain affidavit with the clerk, to have contiguous, adjoining tracts charged as one.   We presume that this was done, else the public officer would not have consolidated the two tracts.   We presume that public officers conform to law until the contrary be shown; but, aside from that consideration, section 25, chapter 31, pointedly says that, "if more than one tract of land be charged as one," the title to the land passes under the sale. Plainly, that statute cures that irregularity, if it were an irregularity.

The next objection to the tax deed is a more grave one. It consists in the fact that the affidavit to the sale list, as it appears in the County Clerk's office, is defective, for the reasons that it is not signed by the sheriff, and merely makes the sheriff say, "I am not, directly or indirectly, interested in the purchase of any of said real estate," whereas it should have stated that "I am not, nor have I at any time been, directly or indirectly interested in the purchase of any of said real estate."   This defect, if it in fact existed in the original affidavit, would vitiate the sale, because *Hays* v. *Heatherly*, 36 W. Va. 613, (15 S. E. 223,) and *Jackson* v. *Kittle*, 34 W. Va. 207, (12 S. E. 484,) and *Baxter* v *Wade* 39 W. Va. 281, (19 S. E. 404,) hold such a

defect sufficient to prevent a deed under the sale; and *Phillips* v *Minear*, 40 W. Va. 58, (20 S. E. 924,) goes further, and holds that such defect will not merely prevent the execution of a deed under the sale, but will avoid a deed.    I have said that, if such defect actually existed, it would, under the case of *Phillips* v. *Minear*, overthrow the deed; but that defect does not in truth exist in the original affidavit, for the copies of the sale list and affidavit, certified by the auditor, show no such defect.    Which shall we accept as the superior evidence upon the fact?    Our statute, in the same section, makes the copy of the record, from both the clerk's office and the auditor's office, evidence of the original, giving neither superior weight; but the original sale list is in the auditor's office, and, as the auditor's copy shows the affidavit to be correct, we would say naturally that it was evidence of the fact, and likely the stronger evidence, because it shows that the sheriff conformed to law, instead of departing from it.    The clerk must have made a mistake in copying the original; and he who asserts the defect, in view of these two conflicting documents, should furnish conclusive evidence of the defect; but though the auditor's record shows a proper affidavit, the plaintiff has given no evidence to meet its showing.    Therefore I repeat that such defect in the original affidavit does not exist.    But that does not yet end our trouble without further showing. That trouble consists in the fact that that affidavit, as it appears on the face of the proceedings of sale in the county clerk's office, shows such defect; and the statutes and our decisions contemplate that defects appearing on the record in that office may defeat a tax sale.    This brings us to the question whether that defect, appearing in the clerk's office, will overthrow this deed.    Now observe that decisions above cited show that such defect, if existent, would prevent a deed;    and *Phillips* v *Minear* goes a step further, and holds that it would overthrow a deed.    But what if it does not exist in fact, but appears to exist from the record in the clerk's office?    That cause so holds, because, where an affidavit does show such defect, the sale is bad, because contrary to section 9 prohibiting purchases by sheriffs and others; and that the omission of the affidavit

to negative all interest of the sheriff in the sales furnishes, by implication, evidence that he had such interest, and nullifies the sale under section 9; and that the curative provisions of section 25 do not apply to a sale that is had under section 9. But observe, that is where the affidavit does contain that defect. But, where it does not exist, what then, I repeat. is the effect of the fact that the county clerk's record shows such defect? To repeat, it is plain, then, that we are brought to the question of the effect of that record showing such defect. Is its antidote to be found in section 25? Is it cured by its provisions? I refer here to that admirable collection of the statutes and many decisions upon the subject of ministerial tax sales, dating from 1781 and running down to the present, made by Judge Holt in *Hays* v *Heatherly*, 36. W. Va., 613, (15 S. E. 223,) where it will be seen, as also by numerous other cases, that it has been the earnest and persistent effort of the legislature, in various acts since 1814, to make tax sales confer upon the purchaser, not a myth or shadow, but a good and valid title. The state has adopted the sale of lands delinquent for taxes as a means of obtaining her revenue; and it is to her interest, as well as but justice to the purchaser, whose money pays the taxes of the delinquent taxpayer, that her sale should confer a reliable title If tax sales are like dead sea apples, turning to bitter ashes on the lips, not only conferring no title upon. the purchaser, but involving him in costly litigation and disaster, then that process of the state to collect her revenue becomes useless and abortive to her, and a fraud upon the purchaser. Under the influence of prior decisions as they are construed, it has come to be the popular understanding that these land sales, which we witness in every county biennially, are mere shams, and that no man can acquire a good title under them. I think these decisions are to some extent misconstructed, but it is useless to show wherein. I mention them to say that it becomes the bounden duty of this Court to open its eyes to these numerous acts, made with plain design and purpose to render these tax sales efficient to collect delinquent taxes, and to confer upon the purchaser a substance, and not a shadow.

I ask, again, does section 25 cure the said defect? As it

is now found in the Code of 1891, it is a strong and comprehensive curative statute. It provides that, when the purchaser has obtained and recorded his deed, the estate of the former owner shall vest in the purchaser, "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appears on the face of such proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice and mislead the owner of the real estate so sold as to what portion of his real estate was so sold, and when and for what year or years it was sold, or the name of the purchaser thereof; and not then unless it be clearly proven to the Court or jury trying the case that, but for such irregularity, the former owner of such real estate would have redeemed the same under the provisions of this chapter." That clause tells us that there are some irregularities specifically provided for in the section, and, as to others, defines what manner of defect it must be to affect the sale; and, when we look for those irregularities thus specifically provided for, we find that among them is the irregularity involved in this case, as the section provides that "no irregularity, error, or mistake in the delinquent list, or in the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county court, or in the recordation of such list or affidavit," shall prejudice the sale. Now, the defect in the affidavit in this case is covered by that clause in its very letter. Nothing could be plainer, it seems to me. It is simply a question, not of construction, but of obedience to the statute. Can we say, as some of our former decisions speak of irregularities, that this defect is not an irregularity? It is nothing else. It is an affidavit attempted, but erroneous or defective. It has been said that all those things which the statute requires to be done are essentials and not mere irregularities, and that the statute intends to cure mere irregularities; but I would say that an irregularity is the erroneous doing of something required by the statute, for surely those things that are required by the statute are necessary, and things not required by it need not be done; and hence, when the statute cures what is called an

"irregularity," it must refer to something which under the statute, ought to have been, but was not, done. It cannot possibly refer to something that the statute did not require to be done. Hence "irregularity, error or mistake" mean something omitted or misdone required by the statute, making the act one badly done. Note that the statute uses all three words in its struggle to cure these defects. It seems to me that such a defect as this would be cured by the statute but for our decision in *Phillips* v. *Minear, supra;* but that case held that the omission in the affidavit was proof of interest in the sheriff, and only for that reason nullified the deed; but here there is in fact no such omission, and therefore no evidence that the sale is invalidated by section 9, on which that decision was based. Hence that case does not bind us in this case. It cannot be that this county court record can have the effect of showing what is not a fact, and overthrowing the tax sale. That case is the only one that I know of which goes to the length of defeating a deed for this defect. The other cases, of *Hays* v. *Heatherly* and *Jackson* v. *Kittle* and *Baxter* v. *Wade*, only hold that the defect would prevent the execution of a deed; and Judge Lucas, in the *Jackson-Kittle Case*, confines the effect of such a defect to that limit, and indicates that it could not invalidate a sale perfected by a deed. He seemed to recognize the force of the said curative statute, applied to a sale consummated by a deed, saying that the legislature intended only to apply the statute to such consummated sales. Certain defects would, at common law, avoid the sale and any deed under it. Our statute renders some of these harmless, but not until after the deed is made. It steps in only then. It so says in words. Thus, it leaves them until a deed is made as at common law, and thus the cases of *Hays* v. *Heatherly*, *Jackson* v. *Kittle*, and *Baxter* v. *Wade* are right, but I do not see how *Phillips* v. *Minear* can be upheld if we give any effect to the curative clauses of section 25. That case held such defect in the affidavit to nullify the deed, not merely because it was a defect on the face of the record, for, if such, surely the cure of the statute would reach it, but as proving that the sheriff had actual interest in the sale, and made it void, under the prohibition of section 9; but I do not

see the distinction.  I do not now see why it is not an irreg-
ularity purged away by the statute.  I therefore say that
the clause expressly curing irregularity, error, or mistake
in the sale list and affidavit, and its recordation, would
obviate the objection to the sale in this case, based on de-
fect in the affidavit or its misrecordation.  Hence, strictly,
I need not refer to the other curative clauses of the statute
above quoted; but, if we treat this defect as one falling un-
der it, it would be cured, because that says that no irregu-
larity shall affect the sale unless it "be such as materially to
prejudice and mislead the owner;" not generally, but only
"as to what portion of his real estate was so sold, and when
and for what years it was sold, or the name of the purchas-
er."  The irregularity must mislead in those respects to
hurt the sale.  Now, I assert that the irregularity in ques-
tion, the omission of the sheriff to negative his interest in
the purchase, could not mislead the owner as to what por-
tion of his real estate was sold, or when sold, or for what
year, or the name of the purchaser.  Hence the irregu-
larity, not being such as to affect the sale under the stat-
ute, is immaterial.

The attorney for the tax purchaser makes an able argu-
ment against the line of decisions in this Court construing
statute requirements as to sales and curative provisions
in them, contending that they do not carry out the design
of the legislature in its legislation for many years past in-
tended to sustain tax sales; and he particularly refers to
*McCallister* v. *Cottrille*, 24 W. Va., 173, and other cases re-
lating to the omission of the sheriff to file his report of
sales within the time fixed by law, and he asks us to re-
view those cases, saying that the consensus of the bar
opinion is that they do not truly reflect the law.  That may
be so, but there are, at least, three decisions holding that
that particular defect would overthrow a tax sale.  As
those decisions establish a rule of property, they would
likely be intrenched and protected behind the rule of *stare
decisis*, as expounded in *Simpkins* v. *White*, 43 W. Va., 125,
(27 S. E. 361,) and *Clarke* v. *Liggins*, 27 W. Va., 663; but a
review of those cases is unnecessary, because it is not
claimed that defect exists in this case, and, if it were
claimed, it would not be tenable, as the papers show that

the day of sale was December 11, 1893, and the report was returned to the clerk's office on the 15th day of December; and it is certified that the clerk copied it in a well-bound book kept for the purpose, as required by statute, and, of course, that is itself a sufficient noting of the return of the list under the said decision. It is unnecessary to say whether the omission to note in clerk's office the return of such sale list within the time prescribed would now affect the sale. Since those decisions, namely, in 1882, the legislature has re-enacted chapter 31, and made some important changes in its curative provisions. That chapter, as found in Acts of 1872-73, c. 117, provides that no irregularity should operate against the validity of the sale, unless it be such as materially to prejudice the rights of the owner; while under Act 1882, c. 130, the irregularity must be such as materially to prejudice and mislead the owner "as to what portion of his real estate was so sold, and when and for what years it was sold, or the name of the purchaser thereof." That act of 1882 for the first time added to the word "prejudice" the word "mislead," and limited the effect of the irregularity by saying that it must prejudice and mislead the owner in certain particular respects to have any effect against the sale. It might be a question whether the omission to return the sale list within the specified time would mislead in those respects. And then said act of 1882 added what was not in the former act, that "no irregularity, error, or mistake in the delinquent list or the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county court, or in the affidavit thereto, or in the recordation of such list or affidavit," shall prejudice the sale. The amendment of 1882 evinces a purpose in the legislature, acting with the prior decisions before it, to further cure defects in tax sales, and strengthen tax titles. And see the closing clause of section 25, first enacted in 1882, when the legislature, with former decisions of this Court invalidating tax sales before it, sought to close the door against many defects which, under such decisions, would defeat tax deeds. It reads as follows: "But no sale or deed of any such real estate under the provisions of this chapter shall be set aside, or in any manner affected by

reason of the failure of any officer mentioned in this chapter to do or perform any act or duty herein required to be done or performed by him after such sale is made, or by the illegal or defective performance, or attempt at the performance, of any such act or duty after such sale," *etc.* In saying that "no sale or deed" should be affected by the defects which it specifies, it would seem to cure defective sales both before and after deed.

JUDGE LUCAS, in *Jackson* v. *Kittle*, 34 W. Va., 216 (12 S. E. 484) saw trouble from it in his way in deciding that case as he did, but concluded that it was not intended to operate in healing defects until after deed made under the sale. I, too, incline to that view. The section, as re-enacted in 1882, opens by declaring that, after deed made, the purchaser should be vested with certain estate, notwithstanding certain irregularities, and, further on, says that no irregularity, error or mistake in delinquent list, *etc.*, "shall, after deed made, invalidate or affect the sale of deed"; and it is not likely that the last clause of the section was intended to go any further than to cure after deed. We would hardly say that, having declared that certain defects should not affect the sale after deed made, the draftsman would suddenly conclude to declare that the same, or some of the same, defects he had already provided for, and limited in effect, should have a further and different effect. If he did, he would have redrafted the whole section, and not have left in his draft the prior language giving cure to those defects only after deed. We must not assume this inconsistency, though the closing clause is later in position in the section. We must take all the provisions together, and, when we do, I think the intent was to say that after a landowner had let these defects stand, and not availed himself of them before deed made, and thus waived them, and allowed the purchaser to carry the sale into deed, he should not thereafter make use of them to avoid the deed. The word "sale" as well as "deed" is in that closing clause, it is true; but so it is in prior clauses. It was only used out of abundant caution to confirm both sale and deed standing on it, though the word "sale" was unnecessary, as, if the deed stand, so would the sale. As in this case the deed had been made,

it is not necessary to say finally whether this closing clause could prevent a former owner from availing himself of the irregularities which it specifies; but it does come in to confirm this deed against the irregularities urged against it, and sheds light on the intent of the prior provisions of the section above discussed. How can—why should—the courts frustrate the plain intent of the legislature to make tax sales consummated by deed, after the last day of long indulgence to the delinquent landowner has gone by, confer some benefit on the landowner? It is true that it seems hard that a landowner should lose his estate for a pittance; but he has failed in public duty, and remains delinquent after long indulgence, and the purchaser is innocent, and his rights should be reasonably respected. The legislature has preferred him, so far as those defects are concerned.

The objection that the sale list in the column giving quantity sold gives the figures "100," not saying whether poles or acres, is an untenable objection. The tract was assessed in acres, and the part of it sold would be taken to be acres.

Another objection is that the plat and description of the part of the five hundred and fifty-four acres of land that was sold do not show from what part of the tract the quantity sold was taken, nor the length and breadth thereof, nor whether any improved lands were taken in the one hundred acres sold, and do not show whether all of the one hundred acres was taken from the tract of five hundred and four acres, or whether any of it was taken from the fifty acres. Surely, there can be nothing in that objection. It will not be assumed until it is proven to the reverse that the surveyor included improved lands against the direction of the statute, or made it of improper dimensions. As we have shown that the two tracts could be assessed as a unit, it surely would not be necessary for the surveyor to specify out of which tract the one hundred acres was taken, or out of what particular portion of the whole tract the part sold was taken. The plat and description give bounds and certainty as to the part sold, and, as the statute cures even an unauthorized assessment of two tracts as one, no error could be predicated on the failure of the surveyor to show

how much of the one hundred acres sold came out of the different tracts.    And, moreover, the statute cures this plat objection by saying no error in plat descriptions of reports by the surveyor shall affect the deed or sale.    I see no defect or irregularity in the proceeding to overthrow the tax deed.    This decree not only nullifies the tax deed, but the conveyance from the tax purchaser to a third party.    There is jurisdiction in equity to annul a tax deed, but is it right for a court of equity not only to do that, but devest a third party of his legal title to land, and thus deprive him of a jury trial?    Is not the jurisdiction in equity limited to the nullifications of only the tax deed?    I doubt whether you can in equity thus take away from a third party his title.    Dissenting opinion in *Davis* v. *Settle*, 43 W. Va., 17, (26 S. E. 557); *Clayton* v. *Barr*, 34 W. Va., 295, (12 S. E. 704).    However, I see it was done in the case of *Simpkins* v. *Edmiston*.    Suppose the third party had other defense,—the statute of limitations, or what not; if you exercise jurisdiction over him in equity, you deprive him of jury trial upon his defense.

Again, this suit was brought without payment or tender of what the purchaser paid, and the decree unconditionally annuls the tax deed without making any provision for payment thereof.    Section 25 says that no deed under a tax sale shall be set aside for defects of record until tender or payment of what the purchaser paid, *etc*.    I consider the decree erroneous on this ground.    The sale was not an utter void or nullity, conferring no right on the purchaser to receive back his money.    It is for mere irregularities in failing to do certain things directed to be done by the statute that the plaintiff seeks to annul the deed,—missteps under the statute; and it says that not even for those irregularities apparent of record, as they must be, not cured by the statute, shall a deed be set aside, until such tender or payment be made, no matter how bad the defect.    There is no void sale under this clause; that is, so as to exempt the owner from such payment if he comes into equity to have relief by the cancellation of the deed.    If he asks equity, he must do it under that clause.

The point is utterly untenable that the report of sales does not show that the sale was at the front door of the

court house, and between certain hours. The statute does direct the sheriff as to this, but nowhere says he shall incorporate it in his report. The form of list of sales is given by the statute, and contains no such matter. Reversed, and bill dismissed.

*Reversed.*