# CHARLESTON.

## NEASE *v.* SMITH.

Submitted January 10, 1912.   Decided February 6, 1912.

1. TAXATION—*Collectors—Compensation—Interest Added to Tax Bill.*

    A sheriff has no right to retain as his own the ten per cent. interest added to tax bills of those tax payers not paying until after the first day of January, by code 1906, ch. 30, sec. 8, but must account to the public treasuries therefor. (p. 326).

2. SAME—*Collectors—Compensation—Statutes.*

    A sheriff is entitled to a commission of seven and one half per cent. on collections of road taxes under acts of 1909, ch. 52, sec. 66. (p. 327).

3. SHERIFFS AND CONSTABLES—*Compensation—Commission—Amount Payable to County.*

    Under ch. 15, sec. 9, acts of 1908, extra session, commissions on taxes collected by a sheriff are to be included in making up the sum on which he is to pay fifteen per cent. to the county. (p. 328).

4. SAME—*Compensation—Statutory Provisions—Repeal.*

    Section 9, chapter 15, Acts of 1908, extra session, is not repealed by sec. 31, ch. 69, Acts of 1909. (p. 329).

(POFFENBARGER, JUDGE, dissenting in part.)

Error to Circuit Court, Kanawha County.

On settlement between S. P. Smith, sheriff, of Kanawha county, and the county, district, and the district school funds,

H. E. Nease, as citizen and taxpayer, intervenes. From a judgment of the circuit court on *certiorari,* to review the judgment of the county court, Nease brings error, and the sheriff cross-assigns error.

*Reversed in part. Affirmed in part.*

*Fred O. Blue,* for plaintiff in error.

*Williams, Scott & Lovett, Dillon & Nuckolls,* and *W. G. Mathews,* for defendants in error.

BRANNON, PRESIDENT:

In a settlement between S. P. Smith, sheriff of Kanawha county, and the county, district and district school funds, the county court, acting upon a report of such settlement made by commissioners, for the year ending June 30, 1910, refused to charge the sheriff with the interest collected by him on taxes unpaid until after 1st January, and refused to charge him with 15 per cent on commissions on taxes collected, and allowed him 7 ½ per cent commission on road taxes. H. E. Nease as citizen and taxpayer intervened in the proceeding in the county court, and excepted to such action of the court, and carried the matter to the circuit court by writ of *certiorari.* The judgment of the circuit court allowed Smith to retain the ten per cent collected by him as interest on taxes not paid until 1st January, and allowed him 7 ½ per cent on road taxes, and charged him with 15 per cent on commission on taxes collected. Nease brought the case to this Court, complaining that the circuit court had not charged Smith with the ten per cent penalty collected by him on taxes collected after 1st January, and had allowed him 7 ½ per cent on road taxes, instead of 5 per cent, as Nease claimed was legal commission. Smith cross assigned error in the action of the circuit court in charging him with 15 per cent on commission on taxes collected.

Is Smith chargeable with that ten per cent per annum interest imposed as a penalty to compel prompt payment on all tax payers in default of payment before 1st January? Code of 1906, ch. 30, § 8, demands payment of taxes by 30th November. On taxes in default it says, "interest" at the rate of ten per cent per annum on the amount of each tax bill shall be added

thereto from said first day of January until payment." One question will answer the claim of the sheriff to this interest. Whose money is it bearing that interest? Not the sheriff's, but money of the public. Who ever heard of any one getting interest on money not belonging to him? We would expect that for such an extraordinary claim some statute allowing it should be shown; but it is admitted that no express statute doing so can be found. But the argument is that by implication the sheriff may retain such interest, because code, § 33, ch. 39, charges the sheriff with the *amount of the county levy;* and because sec. 139, ch. 27, acts 1908, charges him with *amount of taxes* levied by the board of education; and because code, ch. 49, charges him with *amount of district levies;* in other words, only the amounts of levies shown by assessment books, and those statutes do not say that he shall pay interest. Two answers here. One is that when such books of levies are made no interest has accrued or collections made. Another is that those charging statutes and settlements surely mean to charge all taxes, and interest is a part of the taxes, first, because interest is an increment or increase of money, following it as shadow follows its substance, adhering to it. The letter of the statute is that "interest shall be added thereto." Another cogent answer to this claim is that ch. 69, § 31, acts 1909, fixes what commissions on taxes the sheriff shall get, and does not give him that 10 per cent interest. He is limited to that commission. And it is undeniable law that a sheriff can get no reward from the public unless statute concedes it. 35 Cyc. 79. I find that 25 Am. & Eng. Ency. of Law 730, says that a sheriff at common law could receive no compensation other than that received from the king. "His right to it is wholly derived from statutes, which being in derogation of common law, must be strictly construed."

What commission shall Smith receive on road taxes? Section 31, ch. 69, acts 1909, fixes five per cent commission on county levy, district levies, and district levy for schools. This would apply to road taxes. But ch. 52, § 66, acts 1909, a later act by four days, says that commission on road levy shall be the same as on state taxes, which by ch. 69, acts 1909, is 7 ½ per cent. So, it is clear that the sheriff gets that commission on road taxes.

Must the sheriff pay the county treasury fifteen per cent. of his official emolument? This depends on section 9, ch. 15, Acts of 1908. It reads as follows: "Each sheriff, clerk of the county court, clerk of the circuit court, or clerk of the circuit and criminal or intermediate court and prosecuting attorney in the counties of the state, shall receive as compensation for his services as such sheriff, clerks and prosecuting attorney, the following sums, to wit:

(a)   The salaries authorized by law to be fixed by the county court of the respective counties and paid out of the county treasury;

(b)   Such allowance or allowances as may be made by the county court of the different counties to such officers by authority of law now in effect.

(c)   Eighty-five per centum of all other fees, costs, percentages, perquisites, commissions and emoluments; *provided, however,* that such sheriff, clerks and prosecuting attorney shall receive all fees, costs, percentages, perquisites, emoluments and commissions collected or received by him until the gross income of his office from all sources including salaries and allowances as aforesaid shall equal the following sums, that is to say:

For the office of sheriff, three thousand dollars.

For the office of clerk of the county court, two thousand dollars.

For the office of clerk of the circuit court, two thousand dollars.

For the office of clerk of the circuit court and criminal court or intermediate court, three thousand dollars.

For the office of clerk of the county and circuit court when held by the same person, two thousand dollars.

For the office of prosecuting attorney, fifteen hundred dollars.

When said salaries, allowances, fees, costs, percentages, perquisites, emoluments and commissions exceed the sum hereinbefore mentioned to be retained by such officers, then such officers shall pay to the sheriff as treasurer of his county, fifteen per centum of all fees, costs, percentages, perquisites, penalties, commissions and emoluments collected by him, excluding therefrom the salaries of such officers paid out of the county treasury,

and allowances made- by authority of law as aforesaid: *provided, however,* should the gross income from all sources, aforesaid, for any of the said offices, exceed the amounts hereinbefore specified, but insufficient to net said amounts so specified, after deducting the said fifteen per centum aforesaid, then in such event said officers shall retain respectively, said amounts specified as aforesaid, and the residue of said gross income pay into the county treasury."

It is first said that the provision of this statute, if calling on the sheriff to pay this fifteen per cent., has been repealed by section 31, ch. 69 Acts of 1909. We do not think so. The acts are on different subjects. Section 31 of ch. 69 has for its purpose the fixing commissions of sheriff on money coming to his hands from taxes, while section 9, ch. 15, Acts of 1908, does not fix commissions, but deals with what the sheriff shall retain of his emoluments from all sources, what is the minimum he shall receive therefrom, and what part he shall pay into the county treasury. Both statutes can stand in harmony.

What is the purpose of this section? The purpose is to fix minimum incomes, prescribe their sources and raise revenue by imposing what I may call a tax upon the income of the officers named in it. Its plain purpose is to require payment to the county treasury of 15 per cent. of official income. In conference upon this case the point of discussion was, whether sheriff's commission on taxes should bear the 15 per cent. exaction; must it be included or excluded in the sum subject to that 15 per cent? The statute does not fix the sheriff's commission. It does fix the minimum of emolument which he is entitled to receive clear from all sources. It says he shall receive (a) salaries fixed by the county court, and (b) such allowances as may be made by the county court, and (c) 85 per cent of all other fees, costs, percentages, perquisites, commissions and emoluments. Here are three distinct sources of income. The proviso says that he shall receive and keep free of tax all fees, costs, percentages perquisites, emoluments, and commissions until they, with salaries and other county court allowances, shall amount to a certain sum. Having fixed what the officers shall receive from all sources up to at least certain sums, the section proceeding to say what they shall pay out of the total into the county treas-

ury, says that when the income from salaries, and allowances by the county court, fees, costs, percentages, perquisites, emoluments and commissions, exceeds $3,000, in the case of sheriff, he shall pay the treasury 15 per cent. thereof, excepting from the sum total of taxable receipts salaries and allowances by the court. It is contended that commissions on taxes shall not be counted in ascertaining the sum taxable or chargeable with 15 per cent. To exclude it we must make it an "allowance" under clause (b). It is so claimed. But this cannot be so. The word "allowance" does not mean "commission." It means an allowance mentioned in clause (b) made by order of the county court. Clauses (a), (b) and (c) specify the only sources of income under the act. Observe that clause (c) gives the sheriff 85 per cent. of all *"other"* fees, costs, percentages, perquisites, *commissions* and emoluments;" that is, all receipts other than those specified in clauses (a) and (b). The use of the word "other" just after those clauses shows that it is things not named in them on which he gets 85 per cent.; shows that commissions are included in those things on which he gets 85 per cent.; in other words, shows that commissions are not allowances by the county court. If commissions are allowances, then clause (c) does the useless thing of giving 85 per cent. of them, since it would be simply specifying the same thing the second time, when the language is *other* fees, costs, percentages, perquisites, commissions, &c. Commissions are not allowances.

Note that the close of the section before the repealing clause says that when said salaries, allowances, fees, costs, percentages, perquisites, emoluments and commissions exceed the sum to be retained by the officer allowed him as a minimum, then he shall pay the county treasury fifteen per cent. of all fees, costs, percentages, perquisites, penalties, commissions and emoluments collected by him, excluding therefrom salaries of such officers paid out of the county treasury, and allowances made by authority of law "as aforesaid."

Here we see that in making up the sum taxable commissions are in words included, and while salaries and allowances made by authority of law "as aforesaid," are excluded from the tax charge, commissions are not excluded. Allowances and commissions are both counted in making up the total income, but only

allowances and salaries are released from the tax. They are excepted from the tax, but commissions not. If the intention was to exempt commissions from the tax, why not exempt them by name, as they are included by name in total income? They are left taxable. The real question is, Do commissions come under the head of allowances under clause (b)? They do not. The allowances meant are those, (not salaries) fixed by. the court in its discretion by special order, not a commission fixed by positive statute as commissions on taxes. Commissions are not allowances under clause (b). It is said the commissions charged with the 15 per cent. are commisions on execution or other process. The section does not so limit or declare. It uses the generic word commissions, which applies to taxes. There is no subject to which it more plainly applies under statute law and common understanding. The question was asked, what allowances are meant in clause (b), and it was asserted that there are no such allowances under existing law but salaries and commissions. I think the word "allowances" was intended as a safety clause to include any allowances that could be made, not salaries. Again, the Legislature thought there might be in this county or that allowances lawfully made under special local acts. I further answer that question by saying that if there are no allowances that can be made to a sheriff, there are allowances that can be made to the clerk, for instance, the reasonable allowance which the county court can make to him for the financial statement under Code of 1906, ch. 39 § 35. Both the words commissions and allowances are used to meet the case of both. Sheriff's commissions on taxes are not "allowances" made by the court, but are fixed without any order of allowance by the court by ch. 69, Acts of 1909, § 31, the court having no power over them. If a clerk pays this 15 per cent. on fees, why should not the sheriff pay on commissions?

Both are emoluments coming from public service. The tax is levied on clerk fees.

If this were not so there would be little revenue from that source. Did the Legislature intend to tax clerk's fees and release the large amount of sheriff's commissions? The bulk of clerk's income is fees, and the bulk of sheriff's income is commission. We say that the intent of said section is to impose a

tax on incomes from office when such incomes amount to certain sums, for revenue, and we cannot think that the Legislature intended to emasculate the act and defeat it largely as a revenue measure by excluding from the 15 per cent. large sums of commissions.

Just here I note that section 31 chapter 69, Acts 1909, instead of repealing by either expression or implication the act of 1908, regards it as still to continue. "Every sheriff or collector shall be allowed a commission of five per cent., on the amount of all county levies, district levies, and district levies for free school purposes, collected from the tax payers, except those taxes for said purposes paid through the auditor's office from railroads and other persons and corporations, on which last mentioned taxes he shall receive a commission of one and one-half per cent.; *provided* however, that in any county where the gross income of the sheriff's office, including the salaries authorized by law to be fixed by the county court of the respective counties, and paid out of the county treasury, the commissions allowed by this section, and all other allowances, fees, costs, percentages, perquisites, commissions and emoluments, amounts to less than three thousand dollars, the sheriffs of such counties may be allowed such additional commissions," as will make up $3,000. Observe that it fixes $3,000 as a minimum. That is the sum fixed by the act of 1908. And it uses the same words found in that act to make that sum, salaries, commissions, allowances, fees, costs, percentages, perquisites, commissions and emoluments, evidently regarding it. But moreover note that making up the $3,000, it includes "the commissions allowed by this section, and all other allowances, fees, costs, percentages, perquisites, commissions and emoluments." Both tax commissions and allowances are named, showing that they are different things. This feature of this case has been much contested, and but for this I would not have written this prolix discussion of it, as in my humble opinion it presents no serious difficulty.

I think the statute plain, and it is only a matter of obeying its plain letter to execute its plain intent. We cannot put into the statute what is not there. Therefore the sheriff is required to pay the county treasury 15 per cent. on commissions on taxes. Everything that is a fee is counted in the taxable sum; fees are

those sums fixed by law. Allowances are those made under the discretion of court, not fixed, as for instance, the reasonable compensation for financial statement under Code 1906, ch. 39, § 35.. They are not allowances. Allowance is where the court must make an order fixing the amount. The sheriff pays this tax of fifteen per cent. on gross income, except salaries and county court allowances, if any. But by a provisio of the statute if the imposition of the tax would leave him less than the minimum sum prescribed by the statute, he is entitled to retain up to that sum, though the treasury may not get that per cent., and it gets what is left over that sum.

Our conclusion is to reverse the judgment of the circuit court in so far as it allows the sheriff said ten per cent. interest, amounting to $160.48, and affirm it in so far as it allows the sheriff 7 ½ per cent on road taxes, $158.37, and in so far as it charges the sheriff with $2,963.06 for the 15 per cent on commissions on taxes collected.

*Affirmed in part. Reversed in part.*

(POFFENBARGER, JUDGE, *dissenting in part*) :

From so much of this decision as requires the sheriff to return to the county treasury 15 per cent of his commissions on county, district and school district levies, I am compelled to dissent. The proposition violates both the spirit and the letter of the statute and deviates from the obvious purpose of the legislature.

In the cases of each of the officers to which the act in question applies, the sheriff, county clerk, circuit clerk and prosecuting attorney, two items of income are admittedly excepted from the 15 per cent. deduction or concession to the county treasury, the salary and allowances made to the officer out of the county treasury by the county court by authority of law. As to what constitutes the salary there is no difference of opinion. Now does anybody doubt that the allowance mentioned in clause (b), is a different and additional thing. In other words, the salary and the allowance are not one and the same thing. The only controversy or difference of opinion is as to what constitutes an allowance within the meaning of clause (b) and whether commissions allowed the sheriff by the county court on county, dis-

trict and school district taxes are such allowances. The solution of this question, in accordance with sound legal principles, involves consideration of the general policy of the act and its terms.

These officers all derive considerable compensation from sources other than the county treasury. All receive fees from private individuals for services performed for them. The sheriff is allowed commissions on sales and collections in proceedings between private individuals or by the state and municipal bodies against private persons, and *vice versa,* and on state and license taxes, with which the county court has nothing to do and is not in any way concerned. Some or all of the other officers may receive commissions, not allowed by the county court. These sources of income are clearly within clause (c). There are both commissions and fees, therefore, not allowed by the county court, and there are no doubt, perquisites, percentages and allowances to some or all of these officers, that cannot or may not be covered by the terms "fees" and "commissions." It was the clear intention of the legislature to require all of them to pay into the county treasury 15 per cent. of all of these classes of fees, commissions, perquisites, percentages and allowances, emanating from sources other than the county, when it can be done without reducing the compensation below the amount specified in clause (c) of section 9.

It is clear that all of these officers receive salaries, and most of them fees, and the sheriff undoubtedly commissions, which are allowed by the county court. In one form or another, these allowances come out of the county treasury. The salaries are paid by orders expressly drawn upon the treasury in favor of the officers. Some of the fees are paid in that way. Possibly some commissions are so paid. But the sheriff's commissions are allowed to him by way of credit in his settlement. No order is drawn for them. There is no reason why there should be an order in his case, since he has the money in his hands and his settlements, showing how much is allowed, are entered upon the record of the county court, after confirmation by an order of that body. This order of confirmation is the practical equivalent of an order drawn upon the treasury for so much money and turned in by the sheriff as a voucher by way of credit in his settle-

ment. It is as distinctly and substantially an allowance to him
by the county court as would be an order for the amount of his
commission. The statute providing for the sheriff's commis-
sions, using a term, corresponding with the one used in clause
(b), says the sheriff "shall be allowed" certain commissions on
county, district and school district levies, and certain fees, pay-
able out of the county treasury. As the sheriff must settle the
levies with the county court, the commissions to which he is
entitled, are necessarily allowed by the county court. Thus these
commissions comply fully and strictly with the description con-
tained in clause (b), saying these officers shall receive for their
services, in addition to their salaries, "such allowance or al-
lowances as may be made by the county court of the different
counties to such officers by authority of law now in effect." All
fees, payable out of the county treasury to the sheriffs and the
other officers to whom the act applies, are allowed by special
orders drawn upon the treasury. Some if not all of the other
officers receive certain fees payable out of the county treasury.
Here then we have a second class of fees, perquisites, percent-
ages, commissions and emoluments, coming to these officers from
a source from which their other compensation in various forms
does not come, namely, from the county court, by authority of
law, and the clause just quoted relates to the income from that
source alone, and clause (c) says that, from the obligation to pay
15 per cent. into the treasury, the salary mentioned in clause
(a) and the allowances mentioned in clause (b) shall be ex-
cluded.

The shibboleth of the argument for the construction adopted
by the majority of the Court is lack of reference in clause (b)
in express terms to commissions, and the presence of such refer-
ence in clause (c). This argument wholly fails for the reason
that clause (b), necessarily relating to fees, perquisites, percent-
ages, allowances and commissions, covering in general terms all
of the income of these offices from the county treasury, does not
mention any of them in express terms. An allowance must be
for something. An allowance without any basis therefor such
as a fee, a commission, a percentage, a perquisite or an emolu-
ment, would be as illegal and unwarranted by law as it would be
ridiculous and absurd. The language of clause (b) was adopt-

ed for convenience. General terms were used to cover any and all of these things, coming to the officer from the county treasury by authority of law. It is not disputed here that certain "fees" allowed by the county court to the sheriff and the other officers are allowances within the meaning of clause (b), because they are allowed by the county court. On the same principle and for the same reason, a commission allowed to any of them by the county court must fall within the meaning of clause (b). It was practicable, as the legislative draftsman observed, to express the legislative intent in general terms, by describing the common source from which certain kinds of income emanate, and thus to avoid unnecessary and useless verbiage, incident to an attempt to enumerate and specify them. Intending that no officer should be required to pay back into the county treasury any part of any sum derived by him from that treasury, be it a "fee", "commission" or what not, it amply sufficed to say so in the terms employed in clause (b). General terms could have been used and a large saving in words and space effected in clause (c) by simply declaring the officers should pay into the county treasury 15 per cent. of all their incomes derived from sources other than the county, subject to the limitation, guaranteeing certain minimum compensation, if the salaries and other compensation, without deduction, should prove to be sufficient to make it. Why different methods of expression were selected for the two clauses is immaterial, but that the legislators, like judges and all other persons, may and do have wide latitude in the selection of terms to express their thoughts and intentions must not be overlooked. We must also remember the advantages of generalization and its prevalence, when practicable, as a means of combining perspicuity and comprehensiveness in short time and limited space. All courts, legislators, attorneys and other writers adopt it, and the proper use of it is evidence of skill and ability.

Viewed in the light of the positive and unequivocal classification of income, made by the general scope and import of the act, the word "other" in clause (c) is highly significant. It qualifies and limits "fees," "costs," "percentages," "perquisites," "commissions," and "emoluments," of which officers are to receive, under certain conditions, only 85 per cent. Not all fees, costs,

percentages, perquisites, commissions and emoluments are included in or contemplated by clause (c) ; but only those that are "other" than some others. What others? Not fees and commissions other than those covered by clause (a), for that clause includes only salaries, but they are "emoluments," more than emoluments—emoluments and salaries at the same time, as a commission or fee may be that and an allowance at one and the same time, or a fee or commission before allowance and as the basis for an allowance, and ultimately and finally an allowance. Not other than salaries, but necessarily other than those included in and covered by clause (b), for that is the only provision, going before clause (c), that can include fees, costs, percentages, perquisites and commissions. That it may do so is too plain for argument, so plain that nobody denies it. It not only may, but the adjective "other," qualifying, limiting and distinguishing fees, costs, percentages, prequisites, commissions and emoluments in clause (c), proves that it does. If not, why were they so limited and distinguished? Clauses (a) and (b) and the first sentence of clause (c) give the officers absolutely (1) their salaries, (2) their allowances by the county court and (3) eighty-five per centum of "all *other* fees, costs, percentages, perquisites, commissions and emoluments." This is the minimum. It is then provided that under certain circumstances, they may have the salaries and allowances and one hundred per centum of all *other* fees, &c. Then all of this is virtually repeated and further elaborated by the last paragraph of clause (c), requiring each officer, when his entire compensation, accruing from all sources, shall exceed a certain sum, to pay into the county treasury 15 per centum of "all fees, costs, percentages, perquisites, penalties, commissions and emoluments collected by him, excluding therefrom" his *salary, "paid out of the county treasury* and *allowances made by authority of law as aforesaid."* This express exclusion of salaries and allowances in the last paragraph dispensed with the necessity of the use of the word "other" before "all" in that paragraph, and consequent omission thereof shows careful adherence to the plan or scheme of legislation previously expressed, and makes section 9 systematic and harmonious from beginning to end.

Salaries are given in full and absolutely because they come out

of the county treasury. Salaries coming from other sources, if any, as from the state, must suffer an abatement of fifteen per centum, for they are "emoluments." Clause (a) allows in full only salaries "paid out of the county treasury." Clause (c) exonerates from the abatement only salaries "paid out of the county treasury." Clause (b) gives in full only allowances "made by the county court *   *   * by authority of law." Clause (c) exonerates from abatement only allowances "made by authority of law as aforesaid"—necessarily those mentioned in clause (b), for none are elsewhere mentioned by that description. All this evinces intent to adopt the reasonable and consistent plan of allowing county officers to retain what comes to them from the county treasury and avoids the conflict and contradiction involved in permitting them to receive money from the county and then requiring them to pay it back.

As the county court is for the most part a police and fiscal board, having no actual custody of funds with which to pay anything, and adjudges nothing, the word "allow" more fittingly expresses its action than perhaps any other. As to claims and disbursements, its real function is to audit and order paid, or, in statutory phraseology, "allow" claims and demands, upon whatever account, consideration or basis they may be due, or however they may arise. Thus section 40 of chapter 39 of the Code says, as to claims: "The clerk shall present the account or statement to such court at its first meeting thereafter, which shall *allow* the whole or such part thereof as they may deem just, or *disallow* the whole." Section 41 of said chapter says no suit shall be brought on such claim until the court shall have *disallowed* it. Section 37 thereof, prescribing the forms of county orders, says each shall order the sheriff to pay ———— dollars and ———— cents, *allowed* by special order. Section 18 of chapter 39A, says the sheriff shall have certain sums for certain services on the *allowance* of the county court. Section 29 of chapter 63, says the clerk of the county court shall be *allowed* certain fees to be paid out of the county treasury. Section 35 of chapter 39 says he shall be *allowed* a reasonable compensation for preparing a statement. Section 11A of chapter 29 says he shall be *allowed* the actual cost of making up the land book. Section 93 of chapter 3 says he shall be

*allowed* a reasonable compensation for keeping the registration of voters. Section 31 of chapter 30 says every sheriff or collector "shall be *allowed*" certain commissions for collecting the county, district and school district levies. Finding the term "allow" so often and so aptly used in the statutes to express the function of the county court in appropriating money to pay claims, fees and demands of all kinds and authorizing or confirming credits or deductions by the sheriff from funds in his hands as treasurer, I have no difficulty in ascertaining the meaning of its derivative "allowance," embodied in clause (b) of section 9 of the act we are considering, inserted by the same tribunal that has used its parent in so many other places to cover and include fees, commissions and compensation for services. As the legislature made it applicable to fees elsewhere, why not here? As it applies to commissions elsewhere, why not here?

If any of these items of income from the county treasury are included in clause (b), they are all so included, for any reason justifying the inclusion of one will necessarily sustain inclusion of all. They all come from the county treasury as compensation to county officers and are allowed out of the treasury by the county court. While they arise out of divers kinds of county service and under divers designations, they all reach a point at which they fall under the common and general designation of allowances. Moreover, there are no other allowances materially differing from them in character. The law justifies all of them and obliges the county court to make them. They are not discretionary allowances, nor are there any such. Just a few days ago we decided on an application for a writ of error, that a county court cannot allow any claim on any account or to anybody without express or clearly implied statutory authority. No officer can obtain anything out of the county treasury by the mere grace of the county court. The law must give it, else he is not entitled to it. Though the law gives it, the county court must appropriate the money to him by an "allowance" in the form of an order or otherwise before he can obtain payment. No instance of a discretionary allowance to any officer has been pointed out, and I apprehend that the members of this Court uniting in the majority opinion would not for an instant sanction a claim of any such authority in any county

court, unless it pertained to some of the county court's own
rights or undertakings and, in such cases, the allowances would
necessarily be made to persons other than the county officers,
whose services may be demanded on account of the salaries al-
lowed them and ·without additional compensation. The stat-
ute itself impliedly forbids discretionary allowances to county
officers. Section 49 of chapter 39 of the Code says: "The
county court of every county shall allow annually to the county
officers, hereinafter. mentioned, *for their public services, for
which no other fee or reward is allowed by law,* such sums to
be paid out of the county treasury as are deemed reasonable
by the court, within the limits ascertained by law, that is to say;"
and then sets forth maximum and minimum limits of salaries.
Thus the salary, mentioned in clause (a), covers all public ser-
vices for which "no other fee or reward is allowed by law," and
all the discretion the court has must be exercised in fixing that
item, leaving none applicable to items falling under clause (b).
In other words, all the discretion it has in favor of these officers
must necessarily be exercised in fixing their salaries, falling
under clause (a), which proves that allowances contemplated
by clause (b) are such as the court are not only authorized by
law to make, but are also legally bound to make.

Clause (b) therefore must apply to and include fees, com-
missions, perquisites and emoluments charged by law upon the
County treasury, but not payable except upon allowance by. the
county court, which means appropriation of the money to pay
them, or be denied any force or effect whatever. If it does not
include such items, it is a dead letter and performs no office or
function whatever. It cannot be deprived of any function and
made useless, consistently with the rules of construction. In
construing a statute, the court must give to every clause, phrase
and word a meaning and effect, if it is possible to do so. *State
v. Harden,* 62 W. Va. 313, 347; *Baxter v. Wade,* 29 W. Va. 281;
*Argan v. Quinn,* 39 W. Va. 535; *Bank v. County Court,* 36 W.
Va. 341; *Jackson v. Kettle,* 34 W. Va. 207. Being elementary,
this proposition requires no further discussion or citation of
authorities.

The majority opinion seems to assert two supposed reasons
for its refusal to adopt this construction. One of these is that

the officer would get commissions twice, once under clause (b) and again under clause (c), and the other that both allowances and commissions go into the total sum upon which the 15 per centum is charged and allowances only are excepted. As to the first objection, it is to be noted that the officer does not get his commissions twice. The totaling of salaries, allowances, fees, costs, percentages, perquisites, emoluments and commissions in the last paragraph of clause (c) is not made for the purpose of determining a total sum out of which the 15 per centum is to be taken, but for the purpose of determining whether it can be taken out at all. Notice the terms: "When said salaries, allowances, fees, costs, percentages, perquisites, emoluments and commissions exceed the sum hereinbefore mentioned to be retained by such officer, then such officer shall pay to the sheriff as treasurer" of the county, not 15 per centum of any total sum, but 15 per centum of all of certain items, fees, costs, percentages, perquisites, penalties, commissions and emoluments collected by him, except such thereof as are salaries and allowances made by authority of law. This paragraph does not require all of the emoluments or compensation of the officer to be added up and certain deductions made, salaries and allowances, and then 15 per centum of the remainder of the total sum to be paid into the treasury. The abatement of compensation and augmentation of the treasury will be exactly the same, if 15 per centum of each of the several items is turned in. But, if it did require aggregation, fees and commissions constituting allowances under clause (b), would not be put in once as allowances and again as commissions and fees, and then stricken out only as allowances. They would go in only once under the general designation of allowances. After putting in salaries and allowances, which include fees and commissions allowed by the county court, only the *other* fees, commissions, &c., would be added, but the terms require no aggregation of these items into a sum total from which to take the 15 per centum for the treasury.

As to the second objection we may say the same reasoning would prevent the exclusion of anything. The paragraph puts into the enumeration emoluments and the excepting clause does not exclude them. Emoluments is broad enough to cover the

salary as well as all fees, costs, percentages, perquisites, penal-
ties, commissions and allowances. It would cover discretion-
ary allowances, if there could be any. If commissions are not
excepted because they are put into the enumeration and not ex-
cluded in words, emoluments, covering salaries, allowances, per-
quisites and every other conceivable thing, would not be exclud-
ed for the same reason, so that everything any of these officers
get would be subject to a deduction in favor of the county treas-
ury of 15 per centum. The theory of the majority, consistently
applied, subjects all fees allowed by the county court to the 15
per centum deduction, for fees as well as commissions are spe-
cifically mentioned in the supposed aggregation, and not exclud-
ed by name. So does it cut out of clause (b) the allowance
to the county clerk for preparing the financial statement, which
is an *emolument* of the office, and not a salary, for emoluments
are specified in the supposed aggregation and not excluded by
name. Yet the opinion, in violation of the theory and in flat
contradiction of its own argument, says this item falls under
clause (b). If so, why not a fee allowed by the county court?
If so, why not a commission allowed by the county court? The
argument applied to keep commissions on county and district
levies out of clause (b), directly applicable to fees and emolu-
ments, other than salaries, is thus cast to the winds, in the effort
to find something for the operation of clause (b) other than
these commissions. Is not the allowance to the clerk an
emolument? Certainly. Are not emoluments included in the
alleged aggregation? Yes. Being so, is it excluded by name?
No. Then if, because of these facts, the commissions in ques-
tion are not excluded as being in clause (b), how can this emolu-
ment be excluded, the facts in each case being the same? All
such allowances are emoluments. How can any of them belong
to clause (b), under the majority theory, let them be discretion-
ary with the court or obligatory upon it? I repeat they are
emoluments and the argument that cuts out commissions cuts
out emoluments, other than salaries and allowances. Is it in-
cluded in clause (b) because it is an allowance? So is a fee
because an order must be drawn for it. So is a commission, be-
cause a settlement must be made and recorded, *allowing* credit
for it. The allowance to a clerk for preparation of the financial

statement is not discretionary. It is obligatory. The court is bound to allow it. The statute says "he shall be allowed a reasonable compensation" for it. Code ch. 39, sec. 35. If the court should cut his claim for it below the standard of reason, the clerk may sue and recover the value of the service. For this reason, as well as for others stated, this item, the only one conceded to be an allowance under clause (b), must go out, and the clause becomes a dead letter, made so here in plain violation of the rules of construction. There are no such difficulties and inconsistencies as the majority opinion supposes. The excluding clause in the last paragraph embraces all that is included in clause (b). The majority opinion admits this. Hence the crucial question is what does clause (b) include? To determine that, we must look at clauses (a) and (b) and the first paragraph of clause (c). We cannot ignore these and go to the final paragraph of the section and make everything turn on a few words found in it. The rules of construction require the court to read the whole section together, give effect to all of its parts, every word of it, and then harmonize them and make the section operate as a consistent whole. Clause (a) gives absolutely the salary. Clause (b) gives absolutely the allowances. The first paragraph of clause (c) gives 85 per centum of all *other* fees, costs, percentages, perquisites and emoluments. The word "other", qualifying all these items, proves beyond doubt that those things are included in clause (a) or (b). If they are not, we must attribute to the legislature the stupidity of having inserted a useless, meaningless and confusing word, "other;" and also of having inserted a clause, clause (b), without giving it any office in the world to perform or anything to act upon, for I have shown allowances must include fees and commissions or nothing. No court can do this consistently with the rules of construction, as I have shown by authorities already cited. Having thus shown that clause (b) includes such fees, costs, percentages, perquisites, commissions and emoluments as are allowed to the officers by the county court by authority of law, we turn to the excluding clause in the last paragraph which says, "excluding therefrom the salaries of such officers paid out of the county treasury, and allowances made by authority of law as aforesaid." The allowances so excluded are all the allowances covered by clause (b).

I have demonstrated the impossibility of discretionary allowances to officers. That proves they could not have been contemplated as falling under clause (b) ; but if there could be such allowances, no word found in the clause limits it to mere discretionary or even extraordinary allowances, if there could be such. On the contrary, the clause says the officers shall receive such allowance or allowances as the county court may make by authority of law. Where is the warrant of the Court in the terms of the clause or the spirit of the act for addition or interpolation of the word discretionary? Allowances under special statutes, as suggested in the majority opinion, exist only in imagination. Nobody has pointed out any or can do so. They are myths, pure and simple.

The opinion seems to assert that commissions cannot go into clause (b) because not allowed by a special order drawn on the county treasury, thus impliedly admitting that allowances to county officers by the county court by special order may go in, and yet it concedes to that clause but a single item so allowed, upon the false assumption that its allowance is discretionary. Now clause (b) says nothing about the form of the allowance. It excepts allowances, and if an allowance is made by credit in an officer's settlement, it is as much an allowance as if made by a special order. Indeed, there is an order of allowance in the entry of the settlement upon the court's records and approval thereof. No rule of interpretation justifies or permits interpolation of the word "special" before "allowance or allowances" or the words "by special order" after these terms

This construction, susceptible of the equivalent of mathematical demonstration, is sustained by other considerations pertaining to the status of the officer in question, the conditions in view of which the legislation was enacted and its objects and purposes. The collection of taxes is not strictly within the legal theory and scope of a sheriff's office. In handling levies he acts as collector and treasurer. Section 32 of chapter 39 says: "The treasury of each county shall be kept by the sheriff thereof, who shall be *ex officio* treasurer of such county and of each district therein." His compensation as such consists wholly and solely of commissions on levies and other receipts into the treasury. He is the collector as well as the treasurer, and this compensation

to him is charged with enormous expense in the employment of deputies to aid in the collection and disbursement of the levies. It is not a net receipt. His salary, fees and commissions as sheriff constitute but a small portion of his income. The highest salary allowed to a sheriff is only $500.00, and many of them receive only $200.00. The highest salaries allowed for clerks will average in the several counties of the state, three, four or five times the salaries allowed to sheriffs. They are not required to abate any portion of these salaries. The sheriff's commissions on county and district levies are to him what the salaries of the clerks are to them. He is virtually denied any salary because he gets these commissions, and his expenses for assistance are much heavier than those of clerks. The legislature allowed him commissions in lieu of a salary. All these facts were known to the legislature. To allow these clerks their several salaries without abatement and, at the same time require the sheriff to turn into the treasury 15 per centum of his commissions on these levies, works an unjust and unreasonable discrimination against the latter, which the legislature cannot be deemed to have intended, and this applies another settled rule of construction. "Of two permissible constructions of a statute, one working manifest injustice and the other equity and fairness, the latter is adopted, upon the presumption that the legislature did not intend the results flowing from the former." *Hasson* v. *Chester*, 67 W. Va. 278; *Old Dominion &c. Assn.* v. *Sohn*, 54 W. Va. 101; *Dickey* v. *Smith*, 42 W. Va. 805. Besides, the legislature knew the sheriff's commissions had been largely cut down and reduced by the revision and alteration of the tax system. In almost every county in the state, large levies on public service corporations, other than railroad companies, were formerly collected by the sheriff and were subject to his ordinary commissions. At the time of the passage of this act, all of those levies were collectible by the auditor and the sheriff's commission on them reduced from seven and one-half and five per cent, to one and one-half per cent. The legislature thus appears to have reduced the income of the sheriff's office to a point deemed reasonable, without the imposition of this 15 per centum abatement. The income of the sheriff's office in a few of the larger counties, such as Ohio, Wood, Cabell and Kanawha, may be

larger than is necessary, and this may be equally true of the offices of the clerk of the circuit court and clerk of the county court. But that constitutes no reason for a construction or interpretation of this statute that will make it operate harshly and unjustly upon the officers of the smaller counties in which the offices do not pay sums commensurate with the services performed and the liabilities incurred. The legislature, passing this act without sufficient information as to the compensation of these officers to enable it to see what would be just and right, put itself on the side of safety and justice.

When the act was originally drafted and introduced, it provided for specific salaries for all these officers and required them to pay into the treasury all of the receipts from all sources in excess of the prescribed salaries. Seeing the possibility of injustice in an attempt to fix compensation without full knowledge of material facts, this plan was altered by amendment and section 9 put into its present form. This entirely changed the nature and purpose of the act as a whole. Its main object then was to effect a slight reduction for the time being and obtain, for the purposes of future legislation, information which the legislature did not have. Formerly no officer was required to disclose in any manner the amount of fees received by him. The first eight sections of this act are so drawn as to require all these officers to give accurate accounts of all fees, commissions, perquisites and emoluments received by them or to which they are entitled, and they are inhibited from performing any gratuitous services. These provisions were intended to make public as a matter of record the income of these offices which had been previously secret and unknown except to the officers themselves. Salaries and allowances by the county courts were not of that class. The records had always disclosed them, including the sheriff's commissions, and the legislature had altered them from time to time, so as to conform to its notion as to what was commensurate with the service and responsibility. His settlements have always been made matter of record, open to the inspection of the public, just as the salaries of county officers have been. Now that these officers, under the act here involved, are required to make full disclosure of their incomes, the legislature at any of its future sessions may deal intelligently, wisely and justly

with the subject of compensation to county officers. It could not do so when this act was passed and for that reason desisted from the attempt. These general considerations fully sustain the interpretation I have hurriedly outlined here.