# CHARLESTON.

### JOHN L. WHITTEN, ADM'R., v. JOHN O. McDERMITT AND COUNTY COURT OF MASON COUNTY.

Submitted October 15, 1918.    Decided November 15, 1918.

1. EVIDENCE—*Settlement of Sheriff's Accounts—Correctness—Presumption and Burden of Proof.*

   Settlements of a sheriff's accounts made by him with commissioners appointed for the purpose are *prima facie* correct, and he who would overthrow them must point out the particulars in which it is claimed the same are in error, and the evidence, to establish such error, must be clear and convincing.    (p. 66).

2. PAYMENT—*Receipt—Effect.*

   Between the parties a receipt is ordinarily not conclusive, but it is evidence of a high order that the party giving it has received the amount stated therein.    (p. 66).

   (POFFENBARGER, PRESIDENT, absent).

Appeal from Circuit Court, Mason County.

Suit by John A. Austin, revived after his death in the name of John L. Whitten, his administrator, against J. O. McDermitt, late Sheriff, etc., and others.   From a decree dismissing the bill, plaintiff appeals.

*Reversed and remanded.*

*Somerville & Somerville, John L. Whitten,* and *B. H Blagg,* for appellant.

*Musgrave & Blessing* and *Rankin Wiley,* for appellees.

RITZ, JUDGE:

This suit was instituted by John P. Austin against J. O. McDermitt and the County Court of Mason County, its pur-

pose being to correct certain settlements made between said Austin as sheriff of Mason county and commissioners representing the county court. Pending the suit plaintiff departed this life, and the same was revived in the name of John L. Whitten, his administrator. The bill points out certain alleged errors in the settlements made by the plaintiff's decedent, the first of which is that there was charged to him in his settlement made in the year 1910 an item of $12,086.97 as having been received by him from J. O. McDermitt, his predecessor in office, which the bill alleges he never received. The second complaint is that there is charged to him in said settlement made in the fall of 1910 the sum of $2,825.37 more than ever came into his hands, even conceding that the item first above mentioned was a correct charge. The third error is a claim that for the year 1909 he was only allowed five per cent. commission on the road funds instead of seven and one-half per cent. commission, making a difference of $189.33 which should have been allowed to him in addition to what was allowed. The fourth claim is that there was charged to him as capitations received from the assessor, for the years 1911 and 1912, the sum of $2,386.80, when in fact, as is averred in the bill, he only received for those years the sum of $1,705.04, making the sum of $681.71 charged to him in excess of his actual receipts. The fifth item is a claim that he was disallowed interest paid by him on a county order issued to J. O. McDermitt for the sum of $898.64. The interest paid by him amounted to $181.08, which item was not allowed in the settlements.

The defendant county court filed an answer to the bill and denied that there was any error in the settlements in the particulars pointed out. It also filed an amended and supplemental answer in the nature of a cross-bill, which, after denying that there was error in the settlements in the particulars claimed by the plaintiff, alleged that there were errors in said settlements to its prejudice, and pointed out specifically a number of such errors, amounting in the aggregate to several thousand dollars, and asked that the settlements be corrected by charging the plaintiff with these amounts. The defendant J. O. McDermitt also filed an answer denying that

there was any error in the settlements so far as they related to the amounts received by Austin from him.

The settlement about which most of the contention arises was made in the fall of 1910, and the bill in this case was not filed until May, 1914. It appears from the settlement made with Austin by the commissioners appointed for the purpose, in the fall of 1910, that there was charged to him the sum of $17,687.03 as having been received from the defendant McDermitt, his predecessor in office. This amount was, by the commissioners making the settlement, apportioned to various funds to which McDermitt was indebted, which apportionment is not at all material to the inquiry here. It appears that the total of $17,687.03 was made up of four different items: the first being an item of $12,086.97, evidenced by a receipt dated February 28, 1910, given by Austin to McDermitt; the next an item of $1,100.06, as of May 16, 1910; and the next an item of $1,500.00, as of May 26, 1910; and the last item entering into this total being $3,000.00, as of September 21, 1910. The bill does not attack the three latter items entering into this total of $17,687.03, but it does attack the item of $12,086.97, and it is contended in the bill, first, that no such receipt was ever given; and second, that if it ever was given, it was procured from Austin by fraud. Austin in his testimony, however, on being shown the receipt, admits its genuineness, but claims that he never received any consideration for it, and asks to be relieved of the charge of $12,086.97 which was made against him on account of that receipt. As before stated, Austin testifies that he never received from McDermitt anything of value for the receipt given, but he does not attempt to state in his evidence the circumstances under which he gave this receipt, nor the reason therefor. In fact, he could not very well do so after having averred in his bill that he never gave any such receipt, and if there was such a receipt it was procured from him by fraud. The evidence upon which he relies to impeach the settlement in this regard, and to overthrow the receipt, is his own declaration that he never received anything from McDermitt for the receipt; the statement of his office deputies that no amount of money or drafts, or other credits,

came into the office at that time covering the amount of this receipt; that the books of his office show no such item, and that they never knew of or heard of such an item of credit; and the further fact that McDermitt was not able at the time he gave his testimony to state what items went to make up the total of $12,086.97. On the other hand, McDermitt testifies unequivocally that he turned over at the time the receipt was given the amount thereof in drafts or checks or money. He does not know what drafts went to make up this amount, how much of it was checks, or how much of it was money, but he says that at that time the county court was pressing him to make a payment upon his indebtedness to the county, and that he was pressing his deputies to bring in all items which could properly be used as credits, and that he succeeded in this way in getting this amount and turning it over to Austin, and saved for the time the suit which the county court had threatened to bring unless he did make a susbstantial payment. He is corroborated in this by the testimony of S. L. Parsons. He says that about this time he helped McDermitt make up a list of a number of items to be used as credits in his settlements, amounting to something over twelve thousand dollars, and it appears that this is the only item of that amount, or nearly that amount, which McDermitt ever paid over to his successor. But the strongest evidence in support of this receipt is the testimony of the two commissioners, J. E. Beller and F. G. Musgrave, who made the settlement. They testify that when they were making this settlement they called upon Austin to advise them what amounts had been turned over to him by his predecessor in office, it appearing from McDermitt's settlements that there were considerable amounts belonging to the county in his hands; that Austin replied that that was not his business; that if they wanted to know how much McDermitt had turned over to him they would have to get it from McDermitt, and have him produce his receipts; that they, thereupon, did call upon McDermitt to produce any receipts he had showing payments to Austin; that McDermitt produced, among other receipts, this receipt for $12,086.97; that upon the production of this receipt they called Mr. Austin's attention to it, and

he admitted its genuineness, and that it was a proper charge against him; and that shortly after they had called Austin's attention to it his clerk, who testified upon this hearing that he had no recollection of ever seeing this $12,086.97 receipt, came into the office where they were making the settlement, and desired them to understand that Austin was not trying to conceal anything from them, and showed them a statement in a book which he had of the particular items in the way of drafts, checks and cash which had been received by Austin from McDermitt, constituting the amount evidenced by the receipt for $12,086.97. If there was no settlement made, and no receipt given, a clear preponderance of the evidence shows that Austin received proper items constituting this charge, but in addition to the evidence introduced in this case we have the settlement itself and the receipt which he gave. This is not an *ex parte* settlement, but is one between the parties, the two commissioners representing the county court on the one hand, and Austin representing himself on the other. They were standing at arms length, and this is made to appear with particular force by Austin's attitude when he is asked to advise the commissioners what amounts he had received from his predecessor. His answer on that occasion shows that he did not propose to admit anything except what could be proved against him, and that he was determined to insist upon no charges being made against him except those that could be established by McDermitt by proper receipts. He does not deny that he assumed this attitude in making the settlement. Considering then the nature of this settlement between the two parties, dealing with each other at arms length; in order to invalidate an item therein because of mistake or fraud the evidence must be clear and convincing. The receipt itself is introduced in evidence in this case, and while it is true that a receipt is not conclusive between the parties, still it is evidence of a very high character, and when it is supported, as it is in this case, we do not hesitate to say that the plaintiff has failed to show any reason for correcting the settlement so far as this charge against him of $12,086.97 is concerned.

His next complaint is that he has been charged with

$2,825.37 more than ever came into his hands from all sources, and he attempts to show this by setting out the statement of the balance due from McDermitt, his predecessor, of $48,-548.80, then showing the items charged to him as having been received from McDermitt amounting to $32,360.63, and the amount recovered from McDermitt in a suit by the county court for that purpose amounting to $19,013.54, which would indicate that the county court collected from McDermitt a total of $51,374.17 instead of $48,548.80. We do not see what business this is of Austin's, assuming that it is true. The defendant, however, accounts for this difference as interest upon the McDermitt balance, and this, perhaps, is the correct solution of it, but however that may be Austin has no interest in how much the county court collected from McDermitt. There were certain items charged to him in his settlements as having been received by him from McDermitt. In his bill he attacks none of those items, except the one for $12,086.97. If these items are correct, and we must assume that they are until the errors are specifically pointed out, then the amount received by Austin from McDermitt is the sum of $32,360.63, and that is all that he is charged with. If he would have this total corrected, he must point out which one of the items charged to him as having been received from McDermitt is incorrect, and wherein it is incorrect, so that the evidence upon this question could be directed to the very item which is challenged. These charges to him as coming from McDermitt are specific in amount. They were covered by receipts given by him, or checks given to him by McDermitt, and he does not undertake to say that a single one of them is not entirely correct, except the one for $12,086.97 above referred to. There is no merit in this second contention. The charges made against Austin on account of funds received by him from his predecessor, as shown by the settlements, are: February 28, 1910, $12,086.97; May 16, 1910, $1,100.06; May 26, 1910, $1,500.00; September 21, 1910, $3,000.00; January 3, 1911, $9,294.78; January 3, 1911, $1,705.22; April 26, 1911, $848.23; May 4, 1911, $1,-200.00; November 25, 1912, $1,625.37. These are specific charges against him. They amount to the sum of $32,360.63.

He attacks the first item, and the first item only, and as we have before seen he has not sustained his contention that it is an improper charge. Counsel seem to be of opinion that it devolves upon the county court to establish the correctness of the items charged in this settlement. Such is not the case. The settlement is at least *prima facie* correct, and is evidence of a high order against both parties to it, and the one seeeking to correct it must show clearly the error therein. *Chapman* v. *Liverpool Salt & Coal Co.*, 57 W. Va. 395.

The third item, which it is claimed constitutes a mistake in the settlement, is the difference between commissions at seven and one-half per cent. and five per cent. on the amount of the road fund for the year 1909. The commission to which Austin was entitled on those funds was seven and one-half per cent. *Nease* v. *Smith*, 70 W. Va. 325. It clearly appears from the face of the settlement itself that an error was made in the same in this respect to Austin's prejudice.

The fourth alleged error in the settlements is an alleged overcharge claimed to have been made against Austin on account of funds received from the assessor for capitation taxes. Austin's contention is that there was turned over to him on this account only the sum of $1,705.04; while the settlements charge him with the sum of $2,386.80. He swears that he received only the former amount, and that he knows this from the fact that all funds turned over to him by the assessor were deposited by the assessor in the bank to his credit, and he introduced his deposit slips to show that only the sum of $1,705.04 was so deposited. It must be borne in mind that this settlement was one deliberately made between the parties presumably with full knowledge of all the facts, and the one seeking to overthrow it should offer the most satisfactory proof obtainable to that end. The assessor is not introduced to show what payments he made to Austin. The law requires that duplicate receipts be given for such payments, and that one thereof be filed in the county clerk's office. These receipts are not introduced, nor is their absence accounted for. The law also requires the sheriff to keep books of account showing all items received by him and from what source. These books are not intro-

duced upon this question, nor their absence accounted for. The plaintiff contends that it was the duty of the county court to overcome the proof that he did introduce by showing the things to which attention has been called. The county court was under no obligation to introduce any evidence until the plaintiff had introduced such evidence as would overcome the presumption in favor of the correctness of the settlement. The plaintiff's evidence is based entirely upon the facts shown by deposit slips. In whose possession these deposit slips have been does not appear. How easy it would be for some of them to be lost during the years that intervened between the giving of the same and the making of the settlements. If the law was complied with by the parties, and we must presume that it was, then there was evidence in existence which would have made absolutely certain the correct status of this account, while the proof offered only leaves the matter in doubt. Such being the case, it is not sufficient to overcome the presumption of correctness in favor of the settlement.

The last item in which it is claimed there is an error is a failure to allow Austin credit for interest paid by him on a county order which had been presented to and endorsed by his predecessor in office. The proof is clear that this interest was actually paid by Austin when the order was taken up. Why it was not allowed to him in the settlement does not appear. It is, however, clearly shown by the settlement itself that it was not allowed. Patently it was an oversight upon the part of the commissioners and Austin at the time of making the settlement, and such a mistake as could be corrected. The two errors in the settlements above noted could easily be corrected without having a new statement made of the accounts, but would this meet the requirements of justice? It must be borne in mind that the county court has filed an answer in the nature of across-bill challenging the correctness of the settlements in many particulars, the mistakes charged ranging from a few cents to several thousand dollars. No denial is made that the settlements are wrong in the particulars pointed out by the county court. To correct these alleged errors would require a re-examination of

the accounts between the parties. They involve transactions from the beginning to the end of Austin's term of office. This case presents the peculiar situation of both parties charging mistakes in the settlements and both desiring to have the same corrected. It is true the county court denies that the particular mistakes exist which Austin claims, but Austin does not deny that the settlements are wrong in the particulars pointed out by the county court. The main object of the bill was to have a correct statement of the accounts, and it would seem from a reading of the answer and cross-bill of the county court that the county court also desired this. Then, too, as pointed out above, upon some of the items it appears that the evidence has not been fully developed. Ordinarily where errors are discovered in a settlement made between the parties which can easily be corrected by the court, and do not involve a recasting of the account, and are certain and definite in their extent, the court will simply enter a decree correcting such errors, but where errors are discovered, to correct which would involve recasting the accounts between the parties, as well as complicated calculation, ordinarily the matters will be referred to a commissioner to examine the accounts, and taking the settlements made as *prima facie* correct, correct them in order that the exact status of the affairs between the parties may be ascertained and a binding decree entered thereon. This is the course we think should have been pursued in this case. We will, therefore, reverse the decree dismissing the bill and remand the cause to the circuit court of Mason county, with directions to refer the cause to a commissioner to make such corrections in the settlements as may be shown from the evidence already introduced, or any other competent evidence which may be offered, to the end that the true balance, if any, due from Austin to the county court may be ascertained and decree entered therefor.

*Reversed and remanded.*